51 Ill. App.3d 770 (1977)
366 N.E.2d 310
THE DEPARTMENT OF PUBLIC WORKS & BUILDINGS, Petitioner-Appellant,
v.
BERNARD J. VOGT et al., Defendants-Appellees.
No. 76-56.
Illinois Appellate Court  Fifth District.
Opinion filed March 10, 1977.
Rehearing denied September 9, 1977.
*771 *772 William J. Scott, Attorney General, of Springfield (Roy E. Frazier, Jr., and Harry J. Sterling, Assistant Attorneys General, of counsel), for appellant.
Roger L. Vetter, of Walker & Williams, of Belleville, for appellees.
Judgment affirmed.
Mr. JUSTICE GEORGE J. MORAN delivered the opinion of the court:
Petitioner, Department of Public Works and Buildings of the State of Illinois, appeals from a judgment of the circuit court of Monroe County granting defendants' motion to dismiss a petition to take certain land pursuant to the Eminent Domain Act (Ill. Rev. Stat. 1975, ch. 47, par. 1 et seq.) (hereinafter referred to as the "Eminent Domain Act").
On August 25, 1971, petitioner filed a petition to take land owned by the defendants Bernard J. Vogt, Sharon Vogt, and James Vogt under the authority of articles 3 and 4 of the Illinois Highway Code (Ill. Rev. Stat. 1971, ch. 121, pars. 3-101 through 4-508). The purpose for the taking was the construction of a bridge across the Mississippi River. Defendants Bernard and Sharon Vogt filed a cross-petition alleging certain land *773 would be damaged as a result of the taking and requested damages to compensate their expected loss.
On November 16, 1971, petitioner filed a motion for immediate vesting of title in accordance with the Eminent Domain Act "quick take" provisions. (Ill. Rev. Stat. 1971, ch. 47, pars. 2.1 through 2.10.) On November 23, 1971, a hearing was held to establish the authority for the "quick take," and setting preliminary just compensation for defendants' land pursuant to section 2.2 of the Eminent Domain Act (Ill. Rev. Stat. 1971, ch. 47, par. 2.2). On November 30, 1971, an order was entered by the court finding authority to exercise the "quick take" and setting preliminary just compensation. On January 25, 1972, petitioner deposited the amount determined for preliminary just compensation with the treasurer of Monroe County and the court entered an order vesting title to the property in the State. Defendants did not appeal from that order.
The only remaining segment of the condemnation proceedings was the jury trial to determine final just compensation in accordance with section 1 of the Eminent Domain Act (Ill. Rev. Stat. 1971, ch. 47, par. 1).
On April 4, 1973, the court granted defendants' motion for a continuance due to the flood stage of the Mississippi River, since it was impossible for the jury to view the land in its proper perspective. On October 10, 1973, by agreement of the parties, the jury trial was again postponed. Also, on December 11, 1973, April 4, 1974, and November 12, 1974, the case was continued apparently in the hope of reaching a settlement. On January 29, 1975, petitioner continued the case due to the unavailability of counsel.
On March 10, defendants filed a motion to dismiss the petition alleging, inter alia, that the plaintiff had not commenced construction of the bridge, and was thus depriving the defendants of the value of their property between 1971 and 1975. Petitioner's motion to strike defendants' motion to dismiss was allowed by the trial court on March 25, 1975, with leave being given to defendants to file an amended motion to dismiss. On April 23, 1975, defendants took the deposition of one of petitioner's engineers who is familiar with the construction plans. He testified that the plans of the project were still incomplete and that major modifications were yet to be made. He further testified that petitioner would no longer need some of defendants' land that it had acquired pursuant to the "quick take" proceedings, but that it would need additional land from defendants that it had not yet acquired.
On April 28, 1975, defendants filed an amended motion to dismiss which is set out below:
"1. Petitioner's petition for condemnation was filed in this court on August 25, 1971.

*774 2. Shortly thereafter, petitioner instituted `quick-take proceedings' and acquired title to the subject property based on petitioner's representations that the construction of said project was so imminent as to require the immediate vesting of title.
3. Almost four years have passed and petitioner has still not finalized its plans for this project.
4. Since the filing of the petition in 1971, petitioner has altered its plans for this project to change it from a four-lane highway to a six-lane highway and to add the construction of one entire new bridge and to lengthen the bridges. In addition, certain access rights to and from remaining parts of defendant's property under the proposed highway, are being eliminated under the revised plans. Certain construction easements which are a part of this condemnation suit will not be required. Additional property will be required from the defendants for an access road which was not planned under the original plans, and other changes are being made which will directly affect the issues of this lawsuit.
5. Said plans have not been completed or finalized and will not be completed or finalized until next year or thereafter. Neither defendants nor their attorneys have seen copies of the final plans.
6. The issues raised in this case involved the value of property which would be taken under the present petition but which would not be needed under the revised plans and property which is not being taken in the present petition but will be needed under the revised plans and will affect access rights.
7. Defendants deposed a representative of the Highway Department on April 23, 1975 and he testified regarding the project changes as set forth above and further testified that petitioner's appraiser in this case would have to revise and update his appraisal in view of the changed plans. Defendants have no opportunity to do that since they are not aware of the details of said plans.
8. No construction is contemplated for this project until well into the future, although this petition has been on file since August of 1971.
9. There is absolutely no urgency about the acquisition of defendant's property insofar as petitioner is concerned.
10. A copy of said deposition of petitioner's agent is attached hereto as exhibit `A' and made a part hereof.
11. This case cannot be tried until petitioner's plans are finalized and until defendants know specifically which of their property is being acquired and until they know specifically what access roads will be made available to them. The defendants are unable to present evidence in this matter without having a thorough *775 knowledge and understanding of petitioner's plans for this project.
Wherefore, defendants pray that the court hold a hearing on this matter and enter an order dismissing this cause and granting leave to petitioner to refile its action if and when its plans are finalized and if and when it becomes clear what property rights petitioner will require for the construction of this project."
In its order dismissing the petition and returning the deposited funds to the petitioner, the court made the following findings of fact:
"1. This case was filed on August 25, 1971 at which time plaintiff represented that the construction of said project was so imminent as to require the immediate vesting of title.
2. Over four years have passed and plaintiff's plans for said project are still not completed, and in fact have been recently modified, and no construction has taken place and is not contemplated to begin in the immediate future.
3. The Court takes judicial notice of its docket and of the fact that there is a minimal backlog of cases and that if a case is ready for trial it can be tried before a jury within six months after filing.
4. The case could not be tried at this time because of plaintiff's modifications in its plans and because of the necessity of the appraisers for both parties reappraising the property in view of the modifications. Since the modifications have not yet been finalized, the reappraisals cannot yet be made.
5. `Quick Take' orders have been entered in this Court and plaintiff has deposited the appropriate sums of money with the Clerk of the Court, pursuant to said orders. Said monies are still on deposit and have not been withdrawn by the defendants.
6. No part of said properties acquired by `Quick Take' have been used, altered, or in any way adversely affected by the plaintiff, since the date of said taking.
7. The date of filing of an Eminent Domain suit is of paramount importance because the date of filing is the date used for evaluation of the subject property. The Court takes judicial notice of the fact that property values have increased steadily during the past ten years in this county, and that it would be manifestly unfair to permit any condemning authority to hurriedly file its condemnation petition when property values are relatively low, and then not be in a position to try the case until several years later when property values are relatively high.
8. The Court possesses the inherent or equitable power to assure that no manifest injustice is done to any party and the Court hereby expressly finds that the granting of defendants' motion is absolutely necessary in order to prevent manifest injustice to the parties."
*776 Two principal questions are raised in this appeal: (1) Whether the trial court erred in vacating its order of January 25, 1972, which vested title in the petitioner, inasmuch as the order was a final order and appeal was not taken by the defendants, and (2) whether the trial court was warranted in dismissing the petition.
Petitioner first contends that the "quick take" order of January 25, 1972, was a final order and could not be vacated absent an appeal in accordance with the 30-day provision of section 2.2 of the Eminent Domain Act (Ill. Rev. Stat. 1971, ch. 47, par. 2.2). Petitioner further argues that defendants did not comply with the provisions to vacate a judgment or decree pursuant to section 72 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 72). We shall consider these points in order.
 1 The "quick take" procedure of the Eminent Domain Act involves a unique process. In essence, it is a proceeding within a proceeding. The process involves what is termed a final order from the "quick take" proceeding and a final judgment from the jury determination of final just compensation. By its very nature, it lends itself to some degree of confusion. The dual nature of proceedings under the Eminent Domain Act is of course designed to avoid delay in needed construction projects and recognizes that the greatest potential for delay is in the proceeding to assess the value of the property taken. The importance of unimpeded progress was explained by the Illinois Supreme Court in Department of Public Works and Buildings v. Dust, 19 Ill.2d 217, 219-20, 166 N.E.2d 36:
"It is common knowledge that a large portion of the time consumed in an eminent domain case is devoted to the issue of just compensation and that most appeals are devoted to this issue. And yet, once it has been determined that the petitioner has the right to take the property described in the petition, the only factor delaying the passing of title and possession is a final determination of compensation and its payment. The legislature, recognizing that the time element is often an extremely important factor in eminent domain cases and that many cases take a year or more before a final determination of compensation is made, enacted the quick-taking provisions to expedite the taking and yet afford protection to the respondent."
 2 The quality of eminent necessity in "quick take" proceedings alluded to above is further supported by section 2.1 of the Eminent Domain Act (Ill. Rev. Stat. 1971, ch. 47, par. 2.1). That section delineates certain required allegations in the motion for immediate vesting of title ("quick take") which include:
"(b) the formally adopted schedule or plan of operation for the execution of the petitioner's project; (c) the situation of the property to which the motion relates, with respect to the schedule *777 or plan; (d) the necessity for taking such property in the manner requested in the motion; * * *."
The obvious import of such requirements is that all prerequisites to construction be completed before property is taken pursuant to "quick take" proceedings.
It is strenuously argued on behalf of petitioner that the "quick take" order of January 25, 1972, became a final order with binding effect when no appeal was taken from that order under section 2.2(b) and no order was entered extending the time for taking such an appeal. According to petitioner, the trial court is powerless to vacate such a final order unless the order is (1) void, or (2) subject to attack under section 72 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 72). Petitioner points to the inapplicability of either of these two grounds since the trial court had jurisdiction over the person of the parties and the subject matter on the date of the entry of the "quick take" order on January 25, 1972, and no petition or pleading was filed by defendants under section 72 of the Civil Practice Act which would authorize the court to vacate such an order.
The question of the finality of the "quick take" order raises some very perplexing problems. As noted above, the purpose of the "quick take" procedure is to expedite those matters relating to the authority to take when delay would impede a construction project. It is apparently for the same reason that a "quick take" order becomes final in 30 days if no appeal is taken or if no order is entered extending the time for taking such an appeal. The State's interest in a final determination as to its right to proceed and to the title to subject property is usually well supported. Yet several factors in this case militate against the position that the "quick take" order cannot be set aside.
 3 Section 2.8 of the Eminent Domain Act (Ill. Rev. Stat. 1971, ch. 47, par. 2.8) provides that:
"After the petitioner has taken possession of the property pursuant to the order of taking, the petitioner shall have no right to dismiss the petition, or to abandon the proceeding, as to all or any part of the property so taken, except upon the consent of all parties to the proceeding whose interests would be affected by such dismissal or abandonment." (Emphasis added.)
Under the above section, the petitioner can abandon its project or dismiss the proceeding up to the time when possession of the questioned premises has taken place. Since in this case petitioner has yet to take possession and initiate construction on the property in question, it could dismiss its suit for defendant's property and recover its money even though more than five years have passed since title became vested in the State.
Closely related to the above point is perhaps the most troublesome of all aspects of this case. The primary objection of defendant has been that *778 the property taken by the petitioner has not yet been put to its intended use. In its motion for immediate vesting of title petitioner included the following allegation:
"Petitioner has adopted a schedule which calls for the acquisition of these and other parcels of land in St. Clair County and construction of the proposed improvement therein in the year 1971. This schedule was submitted to the Governor of the State of Illinois on December 1, 1969 by the Director of the Department of Public Works and Buildings of the State of Illinois pursuant to the laws of the State of Illinois and is entitled `Proposed Improvement Program for the Primary Highway System Calendar Year 1971' a copy of which is attached to this Motion and made a part herof as Exhibit `A'.
All of said parcels are located in Monroe County, Illinois, and are necessary for construction of a public bridge for highway purposes. The Petitioner has been unable to acquire and has reason to believe it will be unable to acquire these tracts by negotiation.
Further delay in the acquisition of these tracts will in turn delay the construction of said public bridge for highway purposes and will peril the 1971 acquisition and construction schedule of Petitioner. This in turn will involve probable increased construction costs and will result in delaying the elimination of traffic hazards by the proposed improvements."
Subsequent events have shown that the above allegations were clearly inaccurate. As stated before, one of petitioner's engineers responsible for the construction project testified on April 23, 1975, that the plans for the construction project were still incomplete and that major modifications were yet to be made. These changes will require the condemnation of more of defendants' property and will render some of it already condemned useless to the construction project.
The above facts bring to light the true dilemma of the property owners in this situation. Section 2.2(b) places a 30-day time limit on appeals from "quick take" orders which otherwise become final and binding on the defendants. Yet the ground for objection did not appear in this case until several years later when it became apparent that the taking of the property was not necessary. Thus, to strictly apply the time limitation section 2.2(b) would in effect deprive the defendants of a remedy from an order based on apparently false allegations.
 4, 5 The 30-day limit of section 2.2(b) of the Eminent Domain Act was designed to expedite matters standing in the way of progress; it was not intended to deprive property owners of a method of challenging questionable practices in "quick take" proceedings. Nor was it the purpose of the legislature to restrict judicial intervention when an abuse *779 of the procedure has been established. We hold that it is an abuse of power for a condemning authority to "quick take" property under the pretense of imminent necessity when there exists only some possibility of need at an indefinite future date. Accordingly, we believe the trial court possessed the inherent power to correct such an abuse and to prevent an injustice to defendants. The action of the trial court vacating its order of January 25, 1972, was proper.
However, we need not rest our decision solely on the basis of petitioner's abuse of authority and the inherent power of a court to correct such abuse. As noted above, petitioner has asserted that defendants did not comply with the provisions to vacate a judgment or decree pursuant to section 72 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 72). We do not agree.
In this case, defendants entered a motion to dismiss the original petition apparently based on the assumption that the motion would serve to vacate the "quick take" order much the same as a petition to vacate pursuant to section 72 of the Civil Practice Act. Section 72 provides for relief from judgments and decrees. It does not set out specific grounds for which relief will be granted, or describe the precise nature of the petition required.
 6 We think it is apparent that defendants' motion to dismiss suffices as a petition to vacate pursuant to section 72. Since an order vesting title pursuant to a "quick take" is dependent on the initial invocation of condemning authority under a petition for condemnation, a motion to dismiss that petition must of necessity apply equally to the "quick take" order. Substantively, the motion to dismiss the entire petition accomplished the same result as a motion to vacate the "quick take" order. It therefore follows that the motion to dismiss the petition for condemnation after the "quick take" order has the same effect as the motion to vacate the "quick take" order. Any difference is one in form and not in substance.
The purpose of a section 72 petition is to bring before the court rendering judgment matters of fact not appearing of record which, if known at the time judgment was rendered, would have prevented its rendition. (Schuman v. Department of Revenue, 38 Ill.2d 571, 232 N.E.2d 732; Cabi v. Industrial Com., 40 Ill. App.3d 79, 351 N.E.2d 371.) Section 72 is addressed to the equitable powers of the court and is primarily concerned with the prevention of injustice. (Postal Film, Inc. v. McMurtry, 22 Ill. App.3d 293, 317 N.E.2d 375.) Section 72 relief is also applicable to "quick take" orders of section 2.2 of the Eminent Domain Act. (Department of Business & Economic Development v. Pioneeer Trust & Savings Bank, 15 Ill. App.3d 269, 304 N.E.2d 57.) In addition, "[a] section 72 petition is addressed to the sound discretion of the trial *780 court, and only when there is an abuse of discretion will a reviewing court interfere with the trial court's determination." Taylor v. City of Chicago, 28 Ill. App.3d 962, 329 N.E.2d 506.
Section 72(3) states:
"The petition must be filed not later than 2 years after the entry of the order, judgment or decree. Time during which the person seeking relief is under legal disability or duress or the ground for relief is fraudulently concealed shall be excluded in computing the period of 2 years." (Ill. Rev. Stat. 1975, ch. 110, par. 72(3).)
Thus, the statute places a two-year limitation on vacating judgments, but excludes time when the party seeking relief is unable to determine the grounds for such relief due to the fraudulent concealment of pertinent evidence.
 7 Precisely what conduct should be considered fraudulent concealment is often difficult to establish. Nonetheless, the peculiar facts of this case coupled with the potential for abuse in this area compel us to consider the actions of petitioner as tantamount to fraudulent concealment within the meaning of section 72(3). Clearly, petitioner knew that the construction on the project would not commence directly after the "quick take." We believe petitioner was under an affirmative duty to disclose any delays or modifications in the original plan. Requiring petitioner to do anything less than fully disclose possible changes would be patently unfair in view of the difficulty a landowner would have in learning of such changes.
The prerequisites for section 72 relief were satisfied in this case, for not only was the court's action consistent with basic concepts of equity, but was based on facts not known when the "quick take" order was entered. Under the circumstances, we feel that the trial court acted within its discretion in vacating its order of January 25, 1972.
As to the second question presented in this appeal, petitioner has argued that the trial court's action in dismissing the condemnation petition was an unconstitutional interference with the sovereign powers of the State and was erroneous to the extent that the trial court lacked the power to enter such a dismissal. As was noted in the trial court's order of dismissal quoted above, "the case could not be tried * * * because of [petitioner's] modifications in its plans and because of the necessity of the appraisers of both parties re-appraising the property in view of the modifications. Since the modifications have not yet been finalized, the re-appraisals cannot yet be made." Other findings of the trial court are also of great significance to this question:
"The date of filing of an Eminent Domain suit is of paramount importance because the date of filing is the date used for evaluation of the subject property. The Court takes judicial notice *781 of the fact that property values have increased steadily during the past ten years in this county, and that it would be manifestly unfair to permit any condemning authority to hurriedly file its condemnation petition when property values are relatively low, and then not be in a position to try the case until several years later when property values are relatively high.
The Court possesses the inherent or equitable power to assure that no manifest injustice is done to any party and the Court hereby expressly finds that the granting of defendants' motion is absolutely necessary in order to prevent manifest injustice to the parties."
 8 It is of course true, as the trial court noted, that the value of property taken in a condemnation proceeding is to be determined as of the date the petition for condemnation is filed. (Trustees of Schools v. First National Bank, 49 Ill.2d 408, 274 N.E.2d 56; Public Building Com. v. Continental Illinois National Bank & Trust Co., 30 Ill.2d 115, 195 N.E.2d 192.) Obviously, the application of this rule could cause injury to the landowner where there is a lengthy delay in the prosecution of a condemnation proceeding. It was this potential for abuse and possibility of injury that prompted the Illinois Supreme Court to hold that when a condemning authority institutes a condemnation proceeding it should prosecute the suit with diligence, and that it is liable to the landowner for damages occasioned by a wrongful delay. (Winkelman v. City of Chicago, 213 Ill. 360.) The Illinois Supreme Court has also held that a court may properly dismiss a condemnation suit for failure of the petitioner to prosecute it with diligence. (Sanitary District v. Chapin, 226 Ill. 499.) In Chapin the supreme court dealt with the issue of the trial court's dismissal for want of prosecution in the following manner:
"It is contended that by analogy to these cases the court could not dismiss the petition for failure to prosecute with due diligence when the petitioner was in court willing to proceed, although there had been unreasonable delay in the prosecution. None of the cases cited go to the extent of allowing plaintiff to do nothing for several years and answer a motion to dismiss for want of prosecution by saying that he is now ready to proceed. But this proceeding is not governed by the ordinary rules of practice. The court ought in any case to be able to see that justice is done. And this case is different from the ordinary suit at law in the fact that the statute contemplates a speedy trial, and for that purpose provides for presenting a petition to a judge in vacation to obviate delays detrimental to the public and the parties." 226 Ill. 499, 502.
However, in Trustees of Schools v. First National Bank, 49 Ill.2d 408, 274 N.E.2d 56, where the Illinois Supreme Court faced the constitutional questions of justice without delay and just compensation in the context of *782 a four-year lapse between the filing of the condemnation petition and the trial, the court interpreted Winkelman as allowing recovery not upon the fact that there was a delay in the prosecution of the suit with resulting damages, but upon the theory that the delay in prosecuting the suit had been wrongful. (49 Ill.2d 408, 411.) In addition, the court construed Chapin as recognizing the right to dismiss for failure to prosecute a condemnation proceeding only "where no sufficient excuse is presented." (49 Ill.2d 408, 411.) In ruling that the delay in bringing the case to trial could not be totally attributed to the condemning authority, the court gave great deference to the findings of the trial court and ruled that "its findings will not be disturbed unless they are manifestly against the weight of the evidence." 49 Ill.2d 408, 412.
 9, 10 Likewise, we believe the peculiar position of the trial judge in this case, who presided over all matters from the initial filing of the petition for condemnation, allowed factual determinations which should not be disturbed by this court unless they are manifestly against the weight of the evidence. The trial judge specifically found that modifications in the original plan by the petitioner were of such a nature as to require a re-appraisal of the property to be taken. In addition, the trial court determined that the modifications had not yet been finalized at the time of the filing of the motion to dismiss the petition for condemnation, thus precluding the re-appraisals which were necessary to a determination of final just compensation. We recognize that some Illinois authorities have emphasized the obligation of a defendant in a condemnation proceeding to demand a speedy trial in order to successfully charge undue delay on the part of the condemning authority. (Trustees of Schools v. First National Bank, 49 Ill.2d 408, 412, 274 N.E.2d 56; Department of Public Works & Buildings v. American National Bank & Trust Co., 36 Ill. App.3d 439, 343 N.E.2d 686.) However, such a requirement should not be applied inflexibly without regard to the specific facts of each case. The strict application of that standard to this case would produce great prejudice to the defendants, for they would have been required to proceed to trial without the benefit of re-appraisals of property to be taken and would thus be put to a great strategic disadvantage in proving economic loss. In light of the trial court's finding, we think it is clear that the dismissal of the petition for condemnation should not be made to depend on the defendants' performance of an act which would have been not only useless but also potentially prejudicial.
We note also that the Supreme Court in Trustees of Schools emphasized the acquiescence of defendant's lawyer in several continuances. In this case defendants' attorney also acquiesced in several continuances but promptly filed a motion to dismiss when the nature and *783 cause for the delay were disclosed in the deposition of petitioner's engineer.
 11 Accordingly, we believe that petitioner's contention that the trial court unconstitutionally interfered with the sovereign power of the State in the exercise of its eminent domain power is without merit. The holding of the trial court does not strip petitioner of its eminent domain power; it merely requires petitioner to refile its petition for condemnation. The actual power of eminent domain has not been doubted; rather, it is the implementation of the power which has been questioned. Thus, nothing in the trial court or in this opinion will prevent the petitioner from filing another petition to take the land when plans pertaining to the construction project are finalized. The only effect of this decision is to require petitioner to refile and to pay the value of the property at the date of the new filing.
For the foregoing reasons we affirm the decision of the circuit court of Monroe County.
Affirmed.
CARTER, P.J., and EBERSPACHER, J., concur.