(No. 80-CC-0390—)

BOARD OF EDUCATION OF THE ILLINOIS VALLEY CENTRAL UNIT DISTRICT #321, PEORIA COUNTY, ILLINOIS, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion on motion for summary judgment filed July 10, 1981.*

*Supplemental opinion filed August 12, 1982.*

*Order on motion to reconsider filed December 21, 1982.*

KERR AND EDMONDS, P.C. (JOHN P. EDMONDS, of counsel), for Claimant.

TYRONE C. FAHNER, Attorney General (SUE MUELLER, Assistant Attorney General, of counsel), for Respondent.

ROE, C.J.

This cause is before the Court on Claimant's motion for summary judgment, the response thereto filed by the Respondent, and Claimant's motion to strike that response. On May 12, 1981, the Court heard oral arguments on the motions.

The circumstances which gave rise to this claim were set forth in the complaint as follows. Under the authority granted by section 10—23.4 of the School Code (Ill. Rev. Stat., ch. 122, par. 10—23.4), the Claimant owns, operates, and maintains a number of school buses for the transportation of students in its district. Claimant maintained on its payroll a full-time director of transportation

and other full-time personnel to administer its transportation program. Their duties essentially were said to include: (a) developing bus routes and assigning students, (b) writing specifications for bidding on new buses, (c) arranging the purchase of new buses and sale of old buses, (d) recruiting and training drivers, (e) maintaining accounting functions for the transportation fund, (f) maintaining records of total days of transported pupil enrollment (over or under 1½ miles, total miles travelled, and individual pupil bus riders), (g) administering to the operation and maintenance of a private fleet, (h) administering transportation insurance programs, (i) handling parental complaints, and (j) handling extra-curricular activities.

Pursuant to section 17—8 of the School Code (Ill. Rev. Stat., ch. 122, par. 17—8), Claimant commenced making charges to the transportation fund in the 1967-1968 school year for salaries and related expenses. For the school year 1974-1975 the audit section of the Illinois Office of Education for the first time disallowed $42,842.03 of Claimant's charges and reduced Claimant's claim for that year by that amount. Similarly, for the school year 1975-1976 the audit section disallowed $25,102.91 of charges and reduced the claim by that amount for a cumulative total of $67,944.94. Claimant has previously presented and appealed its claim to the transportation fund audit section which denied its claim. A similar suit filed in a circuit court was dismissed for lack of jurisdiction.

The complaint does not clearly indicate the reason relied upon for the denial of the charges. It states that no challenge was made as to the amounts of administrative salaries or other amounts. Attached to the complaint is a letter from Joseph M. Cronin, State Superintendent of

Education, which the complaint describes as being a rejection letter. On its face however, it says very little. Without more its relevance is questionable. Also attached to the complaint was what was described as the "Illinois Financial Accounting manual for Local School Systems; circular series A, No. 246, 1969 and revised January 1972, Section IV, subsections 501.0, 501.1, 502.16, 503.1, 507.1 and 512.1." However the Court has checked with the clerk's office and finds that only copies of subsections 501.0, 501.1, 501.2, 501.3, 501.7, and 501.9 were actually filed. Regardless, Claimant states that these are instructions to the school districts in this State for salaries in various instances to be pro-rated. The relevancy of these directives is not stated.

Based upon this information the complaint conclusively alleges that Respondent has relied upon inconsistent and unreasonable standards in denying Claimant's charges because of an alleged discriminatory effect of treatment of large and small school districts. It also concludes that said denial is clearly violative of the legislative mandate of section 17—8 of the School Code. Ill. Rev. Stat., ch. 122, par. 17—8.

The Respondent filed no answer to the complaint other than a general denial of the facts which occurred by lapse of the 60 days pursuant to Rule 10.

The motion for summary judgment and accompanying memorandum adds little information as to why the claims were disallowed. It states:

"Apparently, the only authority for disallowing these claims is an *internal policy determination* made by Respondent's audit *section* and *not* pursuant to any formal rulemaking procedure. In fact, it is apparently Respondent's position that its new policy, which became effective in the 1974-1975 school year, provides that salary expenditures for personnel other than school bus drivers and maintenance personnel are nonclaimable." (Claimant's own emphasis)

Nine months later an objection to the motion for summary judgment and a renewal of said motion were filed, the two apparently having crossed in the mail. Claimant subsequently filed a motion to strike Respondent's objection on grounds of tardiness. Although Respondent's objection was clearly filed beyond the time limit, we reluctantly deny the motion to strike in the interests of judicial economy and efficiency. This case presents a situation not heretofore faced by the Court. By looking strictly at Claimant's pleadings we would be forced to remand the case to a commissioner for a full hearing because there is insufficient information contained in said pleadings to sufficiently apprise us of the facts involved and to convince us that Claimant is entitled to judgment as a matter of law. By allowing the objection to be filed much time and expense will be saved.

From the objection to the motion for summary judgment which is 24 pages long including the departmental report we are able to ascertain why the Board of Education denied the claim. Respondent apparently relied on section 29—5 of the School Code (Ill. Rev. Stat., ch. 122, par. 29—5) as authority for determining what costs it would and would not pay. According to that statute the State Board of Education shall prescribe uniform regulations for determining *standards* for reimbursement for transportation *as described in said section*, forms of cost accounting and standards for determining reasonable depreciation. After having reimbursed Claimant for the items which are the subject of this suit for many years, the Board issued what is termed "Instructions for Completing Annual Claims for Pupil Transportation for the 1974-1975 and 1975-1976 school years." It was upon these instructions that Respondent relied to disallow the costs claimed.

We find that Respondent exceeded the authority granted by section 29—5 of the School Code (Ill. Rev. Stat., ch. 122, par. 29—5) in utilizing it to determine on its own what costs it would and would not reimburse. That statute sets forth a formula for reimbursement. Specifically it sets out which pupils are covered and how to arrive at the amount of reimbursement. In several places it refers to costs of transportation. As Claimant correctly points out, the costs of transportation are defined in section 17—8 of the School Code (Ill. Rev. Stat., ch. 122, par. 17—8). It provided as follows:

"Section 17—8. Transportation costs paid from transportation fund. Any transportation operating costs incurred from transporting pupils to and from school and school sponsored activities and the costs of acquiring equipment shall be paid from a transportation fund to consist of moneys received from any tax levy for such purpose, state reimbursement for transportation, all funds received from other districts for transporting pupils and any charges for transportation services rendered to individuals or auxiliary enterprises of the school.

For the purpose of this Act 'transportation operating cost' shall include all costs of transportation except interest and rental of building facilities."

The section of the School Code relied upon by Respondent for authority to determine which costs would and would not be reimbursed does not purport to define *what* costs shall be reimbursed. It provides for *how* the costs, as defined in section 17—8, shall be reimbursed and *how much* of these costs shall be reimbursed. The State Board therefore was only authorized to set up regulations regarding standards for applying the formula. The legislature by section 17—8 has already stated what costs would be covered and nowhere does the statutory scheme provide authority to the State Board to do so.

The next issue is whether or not the type of costs which are the subject of this claim are within the definition of section 17—8. These costs are for a full-time director of transportation and other full-time personnel whose duties were described above. These types of

items do not represent interest or rental of building facilities. Therefore they are proper items for compensation. Also claimed are charges relating to storage of buses when not in use. There is nothing in the record to indicate whether or not the buses were stored in rented building facilities. If so then they would not be compensable; if not then they would be.

The fact that the State is not responsible for all costs of school district transportation systems and that there are other sources from which they can be paid (as stated in section 17—8) is not relevant to the issues of this claim other than the amount of damages. Section 17—8 states what costs the formula set out in section 29—5 applies to. The State is responsible for that amount. The balance shall be obtained from other sources. The same is true with respect to the fact that the State Board is not involved in school district budgeting.

We also note that the expenses that are the subject of this claim were not disallowed for the school districts in Du Page County, yet the statute relied upon by the State Board to disallow these costs to the other districts explicitly requires that *uniform* regulations be formulated. An exemption for one county is not uniform application. Apparently this exemption arose out of a decision of the circuit court of Du Page County entitled *Board of Education, Salt Creek School District No. 48, Du Page County, Illinois v. Bakalis*. Insofar as this decision purports to order payment of State funds for violations of the School Code it is void for lack of jurisdiction. Therefore, contrary to the State Board's interpretation, it is not binding in that county or any county.

We hold that Claimant is entitled to summary judgment on the issue of liability alone. We find that the

record presently does not contain sufficient information for us to determine the amount of damages. The data submitted as proof of the amount of damages is inconclusive, vague, and largely illegible. We feel that an accurate measure of damages would best be ascertained at a hearing before a commissioner or by stipulation. The evidence presented should include proof as to exactly what the cost incurred was, the amount of this cost, and the amount compensable by the State as determined by application of the formula in section 29—5 of the School Code. (Ill. Rev. Stat., ch. 122, par. 29—5.) Any objections to said costs, arising out of an audit or otherwise, not rendered irrelevant by this opinion should be made at the hearing.

The clerk of the Court of Claims is hereby directed to assign this claim to a commissioner.

## SUPPLEMENTAL OPINION

Roe, C.J.

On July 10, 1981, an opinion was filed in this matter following oral argument before the full Court wherein we granted Claimant's motion for summary judgment on the issue of liability and remanded the case to a commissioner for a hearing on the issue of damages.

Prior to the start of the hearing, a stipulation as to the amount of damages was entered into and read into the record at the hearing. With respect to the 1974-1975 school year, it was agreed that the costs incurred for K through 12 were $18,223.53 representing salaries, $5,400.00 representing contractual services, and $237.11 representing travel. Those three figures total $23,860.64. A proration figure of 80.591864 per cent was applied, reducing the sum to $19,229.73. With respect to the same school year, the parties stipulated to the following figures

for the area of special education: $1,462.30 for salaries and $600.00 for contractual services, for a total of $2,062.30 to which a proration percentage of 97.265885 was applied, reducing the sum in this area to $2,005.91. The total of the two amounts for the 1974-1975 school year was then stipulated to have been $21,235.64.

With respect to the 1975-1976 school year, it was agreed that the costs incurred for grades K through 12 were $20,190.35 for salaries, $5,400.00 for contractual services, and $282.60 for travel. The sum of those three figures is $26,190.35 to which a proration of 77.819408 per cent was applied, reducing the sum to $20,381.18. Also in the 1975-1976 school year, in the area of special education, the cost incurred for contractual services only was $600.00 to which a proration of 91.48656 per cent was applied, thus reducing the amount to $548.92. The total of both figures for 1975-1976 is $20,930.10.

The combined total of damages for both school years is $42,165.74. In our opinion of July 10, 1981, we directed the clerk of the Court of Claims to assign the case to a commissioner to ascertain the type of costs incurred, the amount of the costs, and the amount after the proration formula was applied, suggesting that this evidence be obtained at a hearing or by stipulation. While we are not bound by stipulations between parties such as the one at bar, we will not reject them out of hand. Based upon the record before us we concur in the amounts arrived at.

However, subsequent to our finding of liability in our opinion of July 10, 1981, Respondent has shown that an insufficient amount of funds lapsed from which this claim could have been paid. Because of the nature of the funding scheme involved in this matter, all of the moneys appropriated for such expenditures have been exhausted.

When the combined costs of all the school districts in the State exceed the amount appropriated, section 29—5 of the School Code (Ill. Rev. Stat. 1975, ch. 122, par. 29—5) provided for apportionment and that was the situation for the years involved in this case. Had the expenses for which this claim has been made not been rejected by Respondent, Claimant would have been compensated at the prorated per cent. Because these expenses were not allowed, the funds were divided up accordingly, giving the other districts more than they were entitled to. Therefore, despite the equities involved, we are constrained to deny this claim.

## ORDER ON MOTION TO RECONSIDER

Roe, C.J.

This matter is before the Court on the Claimant's motion to reconsider and the State's response thereto, due notice having been given, and the Court being fully advised;

On July 10, 1981, an opinion was filed in this case following oral argument before the full Court wherein we granted the Claimant's motion for summary judgment on the issue of liability or in the nature of declaratory relief and remanded the case to a commissioner for a hearing on the issue of damages. On August 12, 1982, we issued a follow-up opinion wherein we found that the Claimant suffered damages in the amount of $42,165.74. However, because of the funding scheme involved, all of the money appropriated by the legislature with which this claim could have been paid had been exhausted. Therefore, despite the inequities we were constrained by law to deny the claim.

Claimant promptly moved for reconsideration and oral argument before the Court en banc was again held.

The circumstances giving rise to this claim have been recited in our two previous opinions and it is unnecessary for us to review them here. Rule 22 of the Rules of the Court of Claims, dealing with rehearings, provides in pertinent part as follows:

"The petition shall state briefly the points supposed to have been overlooked or misapprehended by the Court, with authorities and suggestions concisely stated in support of the points."

We will address the points raised in the motion for reconsideration and at the oral argument separately.

First, Claimant pointed out that it was the only school district beset with the problem of wrongful denial of reimbursement of funds. Due to the time period involved no other district can now come before us and make a similar claim and no other claims are pending. It is a unique situation now. We agree with the Claimant that there exists no flood of litigation aspect in this situation but that is not a problem. The problem is lack of appropriations to pay the claim. Were there sufficient monies lapsed, 100 or so additional claims would make no difference.

Claimant also referred to the hearings on damages before the commissioner to whom the claim was assigned following our opinion of July 10, 1981. It pointed out that there was a stipulation entered into as to the amount of damages. It also alluded to a recommendation by the commissioner which was purported to be in its favor. It is the policy of this Court that the judges do not make public recommendations of commissioners. Although we are not bound by stipulations by the parties or commissioners' recommendations, we did find that Claimant was damaged in the amount stipulated to. (See our opinion of August 12, 1982.) This point was not overlooked or misapprehended. There were no funds remaining out of which we could make an award.

Claimant also pointed out that it made every effort to proceed with this claim as fast as it could but there was substantial delay on the part of the Respondent. It suggested that if perhaps the claim had proceeded more quickly the money would still have been available. This claim was filed on October 9, 1979. Because of the apportioned payout situation this claim would have had to have been disposed of by this Court before the funds had been exhausted. This date does not appear in the record. We would have had no authority to enjoin the Respondent from making the payment anyway. Regardless, the argument is irrelevant because there are no such funds available now and we have no authority to order them paid back, reapportioned, and paid out again nor can we order Respondent to issue credits or make deductions to future reimbursements. That Claimant may have had the funds at one time and the Respondent may have taken them away, as Claimant represented to the Court at oral argument, also does not change the predicament. Claimant further represented to us that based on our first opinion in this case Respondent did pay Claimant the amounts sought for the next three school years subsequent to the two that are the subject of this claim. While these years are not at issue here, we can only speculate that the reimbursement was sufficiently funded that no apportionment need be made and sufficient funds remained in some nonlapsing account. This too does not change the matter before us now.

None of the points raised is sufficient to overcome the basis of our opinion of August 12, 1982, wherein we concluded, consistent with our opinions where there was an absence of or inadequate amount of funds remaining for which claims are made, that in such a situation we are constrained by law not to make an award. Our conclusion is consistent with article VIII, section 2b of the

Constitution of 1970 and section 30 of the State Finance Act (Ill. Rev. Stat., ch. 127, par. 166). We have no authority to appropriate funds on our own to satisfy the requirements of the School Code. (*Moorleghen v. State* (1978), 33 Ill. Ct. Cl. 159.) It is a matter of legislative prerogative.

Motion for reconsideration denied.