BERNARD VOGT *et al.*, Petitioners-Appellees, v. FRED V. BARTELS-MEYER *et al.*, Respondents-Appellants.

Fifth District    No. 5—92—0832

Opinion filed June 29, 1994.

LEWIS, P.J., specially concurring.

Roland W. Burris, Attorney General, of Chicago (Rosalyn B. Kaplan, Solicitor General, and Daniel N. Malato, Assistant Attorney General, of counsel), for appellants.

Amiel Cueto, of Belleville, and L. Thomas Lakin, of The Lakin Law Firm, P.C., of Wood River, for appellees.

JUSTICE GOLDENHERSH delivered the opinion of the court:
Respondents, Fred V. Bartelsmeyer (Bartelsmeyer) and the Department of Public Works and Public Buildings of the State of Illinois (the Department), appeal from an order of the circuit court of St. Clair County in favor of petitioners, Bernard Vogt and James Vogt, ordering respondents to construct an overpass over Interstate 255 in the exact location shown on petitioners' exhibits 1 through 4, pursuant to the terms of a 1977 settlement agreement between the parties. The principal issue raised by respondents is one of jurisdiction. Respondents contend that under the doctrine of sovereign immunity, the Court of Claims has exclusive jurisdiction over petitioners' cause of action, and the circuit court erred in refusing to dismiss petitioners' case. Assuming, *arguendo*, that the circuit court had jurisdiction, respondents additionally contend that the circuit court erred in deciding the case in favor of petitioners because (1) the circuit court's determination that an agreement existed to build an overpass was against the manifest weight of the evidence, (2) petitioners' cause of action was barred by the five-year statute of limitations applicable to oral contracts (Ill. Rev. Stat. 1991, ch. 110, par. 13—205 (now 735 ILCS 5/13—205 (West 1992)), (3) the Statute of Frauds was applicable, and (4) the Department cannot build the overpass without Federal approval or sufficient funds. We affirm.

I

While the facts are not in dispute, the history of this case is important to its resolution. On August 25, 1971, the Department filed a petition to acquire land owned by petitioners and Sharon Vogt under the authority of articles III and IV of the Illinois Highway Code (Ill. Rev. Stat. 1971, ch. 121, pars. 3—101 through 4—508 (now 605 ILCS 5/3—101 through 4—508 (West 1992))). Sharon Vogt takes no part in this appeal. The purpose for the taking was construction of a bridge across the Mississippi River. A cross-petition was filed, alleging that certain land would be damaged as a result of the taking and requesting damages for such loss. On November 16, 1971, the Department filed a motion for immediate vesting of title in accordance with the Eminent Domain Act "quick take" provisions. (Ill. Rev. Stat. 1971, ch. 47, pars. 2.1 through 2.10 (modified effective July 1, 1982: see Ill. Rev. Stat. 1983, ch. 110, par. 7—101 *et seq.* (now 735 ILCS 5/7—101 *et seq.* (West 1992))).) On November 30, 1971, the circuit court entered an order finding authority for the "quick take" and setting preliminary and just compensation. Three years after this order was entered, the plans for the highway remained incomplete and final compensation remained undetermined. As a

result, the circuit court vacated its original order, dismissed the Department's petition, and entered an order revesting title to petitioners herein and Sharon Vogt.

The Department appealed the circuit court's decision, and on March 10, 1977, this court affirmed the circuit court's determination. (*Department of Public Works & Buildings v. Vogt* (1977), 51 Ill. App. 3d 770, 366 N.E.2d 310.) Our supreme court granted leave to appeal but, after reviewing the matter, dismissed the appeal as moot. (*Department of Transportation v. Schien* (1978), 72 Ill. 2d 287, 381 N.E.2d 241.) The parties worked out a settlement as evidenced by:

> "copies of documents executed by respondents on March 30, 1977, designated as dedications of right-of-way for a freeway, a release for freeway, temporary construction easements and a special agreement, in return for which they were paid sums greatly in excess of the amounts fixed by the court as preliminary just compensation for the taking of the property." (*Schien*, 72 Ill. 2d at 291, 381 N.E.2d at 243.)

Accordingly, our supreme court determined:

> "There is no issue here of right to possession, nor is there any issue of the just compensation to be paid. *** It is obvious that the issues presented in the original proceeding are moot and the appeal is therefore dismissed." *Schien*, 72 Ill. 2d at 292, 381 N.E.2d at 243.

On June 3, 1991, petitioners filed the instant action against respondents, alleging that respondents breached the settlement agreement. On July 29, 1991, petitioners filed their second and final amended petition. Petitioners alleged that in March 1977, Bartelsmeyer entered into a series of agreements in which petitioners agreed to sell to the Department certain parcels of land to be used for construction of Interstate 255. The Department orally agreed to build an overpass over Interstate 255 in order to connect two parcels of petitioners' land which would be divided by the highway. The highway was completed in November 1990 but did not include the overpass agreed to by the parties. Count I of the petition requested enforcement of the settlement agreement, while count II requested a mandatory injunction (specific performance). Respondents filed several motions to dismiss. Attached to the first motion was the affidavit of Jerry Rank, a design-squad leader at the Department of Transportation. Rank stated in the affidavit that on December 28, 1982, he informed petitioners that the overpass would not be built on their property. Attached to a motion for summary judgment filed by respondents was a Department memorandum of Jerry Rank, dated December 28, 1982, summarizing his conversation with petitioners.

Also attached were newspaper articles published in February 1981, in the St. Louis Globe-Democrat and the Belleville News-Democrat which noted the location of the overpass. Respondents also submitted the Department's written policy explaining that the Bureau of Land Acquisitions could only acquire land to obtain right-of-way rights for highways. In response, petitioners filed their own affidavits denying that they had such a conversation with Rank in 1982. Ultimately, the circuit court denied respondents' motions.

On November 5, 1992, an evidentiary hearing was held in which several witnesses testified concerning the agreement in question. Fred V. Bartelsmeyer, who negotiated with petitioners on behalf of the Department, testified that the parties initially agreed to a price of $160,000 as compensation for the taking of petitioners' land, but that petitioners would not agree to sign the deeds or complete the execution of the documents until additional matters were agreed upon, including the building of the overpass to connect petitioners' property. On March 30, 1977, a meeting took place between the parties at which time petitioners were shown the plans for the highway. On these plans, an "X" was marked in the location where the overpass was to be built to connect petitioners' property.

Bernard Vogt testified that he was orally assured by Bartelsmeyer and engineers for the Department that the overpass would be built as described in the plans. Vogt specifically stated that the overpass was one of the things he "held out for so he could get from one side to the other, to the fields, or to the farm." He further claimed he would not have sold the land unless the overpass was built. He believed Bartelsmeyer had the authority to enter into such an agreement. Bartelsmeyer signed the plans as "true and correct" copies and initialed them. Bartelsmeyer testified that the plans were subject to change until signed by the Director of the Highway Department; however, Bartelsmeyer agreed that petitioners were never told that the plans could be changed.

The Department failed to build the overpass in the location agreed to with petitioners but instead built the overpass one mile east of petitioners' property to allow access to a proposed industrial park. Bernard Vogt testified that he was never informed of the change in plans and learned of the change in the location of the overpass when reading the newspaper in 1990. After reading in the newspaper that Interstate 255 was complete, petitioners brought the present action.

On November 9, 1992, the circuit court issued its final order in this case. The circuit court found that the parties entered into an agreement and the "agreement was the underlying basis for settling

and ultimately the Illinois Supreme Court dismissing the underlying litigation, and therefore it is absolutely enforceable by this Court." The circuit court ordered the overpass to be built in the location shown on petitioners' exhibits 1 through 4. Respondents filed a notice of appeal, and the circuit court granted respondents' motion for stay of judgment pending appeal.

## II

Respondents first contend that under the doctrine of sovereign immunity, the Court of Claims has exclusive jurisdiction over petitioners' cause of action and that the circuit court erred in refusing to dismiss petitioners' case. Petitioners respond that the doctrine of sovereign immunity is inapplicable to the case at bar and that it was appropriate under the present circumstances for the circuit court to enforce the settlement agreement entered into between the parties. We agree with petitioners.

In determining whether an action is against the State of Illinois and thus prohibited by law, the courts not only look to the identity of the formal parties but also consider the issues involved and the relief sought. (*City of Springfield v. Allphin* (1978), 74 Ill. 2d 117, 124, 384 N.E.2d 310, 312.) Numerous cases have held that a suit against a State officer alleging that he or she abused his or her discretion or authority is not barred by sovereign immunity, especially if the petitioner is seeking equitable relief. (*Houseknecht v. Zagel* (1983), 112 Ill. App. 3d 284, 445 N.E.2d 402; *Bio-Medical Laboratories, Inc. v. Trainor* (1977), 68 Ill. 2d 540, 370 N.E.2d 223; *County of Cook v. Ogilvie* (1972), 50 Ill. 2d 379, 280 N.E.2d 224.) For example, in *Bio-Medical Laboratories, Inc. v. Trainor* (1977), 68 Ill. 2d 540, 370 N.E.2d 223 (superseded by statute: see Ill. Rev. Stat. 1979, ch. 23, pars. 12—4.25, 4.26, 4.27 (now 305 ILCS 5/12—4.25, 12—4.26, 12—4.27 (West 1992))), a corporation brought an action to restrain the Director of Public Aid from suspending the corporation's right to participate in the Illinois Medical Assistance program. Our supreme court determined that the corporation's actions were not barred by the doctrine of sovereign immunity, as the corporation was not attempting to enforce a present claim against the State but was seeking to enjoin the Director from taking actions in excess of his delegated authority in violation of the corporation's protectable legal interest. *Bio-Medical Laboratories*, 68 Ill. 2d at 548, 370 N.E.2d at 227.

■ The instant case is similar to *Bio-Medical Laboratories* because petitioners herein also seek injunctive relief but do so through enforcement of the settlement agreement. Therefore, petitioners do not seek to enforce a present claim against the State but seek to

enforce a previously-entered-into settlement agreement. Our supreme court previously determined that the original "quick take" action was resolved pursuant to the March 20, 1977, settlement agreement with the parties. (See *Department of Transportation v. Schien* (1978), 72 Ill. 2d 287, 381 N.E.2d 241.) Illinois adheres to the policy that settlements are to be encouraged and given full force and effect (*Sheffield Poly-Glaz, Inc. v. Humboldt Glass Co.* (1976), 42 Ill. App. 3d 865, 356 N.E.2d 837), including when such agreements are oral. (*Fishburn v. Barker* (1988), 165 Ill. App. 3d 229, 518 N.E.2d 1054.) While respondents maintain that the instant action amounts to a breach of contract action, the record shows that this is an action to enforce a previously-entered-into settlement agreement, and we find that the circuit court was the proper forum in which to enforce it.

Respondents analogize the instant case to *Smith v. Jones* (1986), 113 Ill. 2d 126, 497 N.E.2d 738, in which the plaintiffs were among 78 winners in a lottery game which had been advertised as having a grand prize of $1,750,000. After the drawing, the winners were notified that the grand prize amounted to only $744,471. The plaintiffs filed a breach of contract suit against the lottery and its director, claiming "that the lottery 'acted *** in violation of contract law' by refusing to pay the advertised prize, and in doing so went 'beyond the authority' in the Illinois Lottery Law." (*Smith*, 113 Ill. 2d at 129-30, 497 N.E.2d at 739.) The *Smith* majority determined that the plaintiffs' complaint failed to allege fraud, contrary to the appellate court's determination that the complaint was one which was generally grounded in fraud. Instead, the majority decided: "The plaintiffs['] complaint *** alleges only that the Director exceeded his authority by breaching a contract. Such an allegation does not deprive the defendants of the protection of the bar of sovereign immunity." (*Smith*, 113 Ill. 2d at 132-33, 497 N.E.2d at 741.) In the instant case, however, petitioners alleged more than a breach of contract.

The second amended petition included count I, "verified petition for enforcement of settlement agreement," and count II, a "verified petition for mandatory injunction." The complaint maintains that the overpass "has a unique and immeasurable value to the petitioners" and that "money damages cannot compensate the petitioners for the breach, there is no adequate remedy at law, and *** petitioners are entitled to injunctive relief (specific performance) in order to make them whole." Thus, the situation in the instant case is clearly distinguishable from the situation addressed in *Smith*. Moreover, a dissent in *Smith* shows that the court was divided and that two of the justices believed that the complaint alleged facts sufficient to allege fraud. The dissent points out that in *Smith* what is at stake is

the trust and faith of the people who purchase lottery tickets believing it is run properly. "The State should be beyond reproach in something like this because it is important for people to have faith in their government." (*Smith*, 113 Ill. 2d at 136, 497 N.E.2d at 742.) Likewise, in the instant case, petitioners negotiated a settlement agreement and had faith in Bartelsmeyer that the terms agreed upon, including the positioning of the overpass, would be faithfully carried out. Petitioners were so trusting that they did not question the Department for the next 13 years until they read in the newspaper that Interstate 255 was complete. Petitioners trusted Bartelsmeyer and their State government to keep their word. This is not the type of suit which should be cloaked with the doctrine of sovereign immunity.

■ Respondents next contend that the circuit court's decision that an agreement existed to build an overpass was against the manifest weight of the evidence. We disagree and find that the record supports the circuit court's determination that an agreement existed between the parties to build an overpass as shown in petitioners' exhibits 1 through 4. Bernard Vogt testified that petitioners only agreed to sell the property after the Department agreed to build an overpass to connect their property. All parties agree that petitioners' exhibits 1 through 4 clearly show an "X" where the overpass was to be built. Bartelsmeyer admitted petitioners were never told the plans were preliminary and subject to change. Moreover, at petitioners' request, Bartelsmeyer signed and marked the plans as "true and correct." The record is replete with evidence that an agreement existed between the parties to build an overpass at the location shown by the "X" in petitioners' exhibits 1 through 4.

■ Respondents also contend that petitioners' action was barred by the five-year statute of limitations applicable to oral contracts. (Ill. Rev. Stat. 1991, ch. 110, par. 13—205 (now 735 ILCS 5/13—205 (West 1992)).) Respondents assert that petitioners were required to file their petition within five years of the alleged December 1982 conversation with Jerry Rank. Petitioners respond that the period of limitations does not begin to run until the settlement agreement was breached, namely, when Interstate 255 was completed. Additionally, petitioners maintain that the settlement agreement constitutes a written contract and, thus, a 10-year statute of limitations is applicable. (Ill. Rev. Stat. 1992, ch. 110, par. 13—206 (now 735 ILCS 5/13—206 (West 1992)).) We find it unnecessary to determine whether the five-year statute of limitations pertaining to oral contracts or the 10-year statute of limitations pertaining to written contracts applies because in either case it is clear that the period of limitations did not expire.

Illinois follows the "discovery rule" in determining when a period of limitation begins to run. "The effect of the discovery rule is to postpone the starting of the period of limitations until the injured party knows or should have known of his injury." (*Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 414, 430 N.E.2d 976, 979.) Under the discovery rule, determining the point at which the running of the limitations period begins is a question for the trier of fact, unless the parties do not dispute the facts or only one conclusion can be drawn. *Santa Claus Industries, Inc. v. First National Bank* (1991), 216 Ill. App. 3d 231, 576 N.E.2d 326; *Saunders v. Klungboonkrong* (1986), 150 Ill. App. 3d 56, 501 N.E.2d 882.

In the instant case, a factual issue existed concerning the alleged conversation between petitioners and Jerry Rank. An affidavit from Rank and a memo outlining the conversation between Rank and petitioners dated in 1982, as well as articles from two local newspapers noting the actual location of the overpass, were attached to various motions filed by respondents. In response, petitioners filed affidavits denying that a conversation with Rank even occurred. Petitioners were adamant that they did not discover that the overpass would not be built in the location promised until they read a newspaper article disclosing that Interstate 255 was complete. The circuit court denied respondents' motions to dismiss based upon the statute of limitations. At the evidentiary hearing, the circuit court granted petitioners' motion to strike the testimony of Rank because it had previously ruled on the statute of limitations issue. After reviewing the record, we cannot say as a matter of law that the period of limitations began to run prior to petitioners' notification through the newspaper article written in 1990 which disclosed that · Interstate 255 was complete. Thus, petitioners' cause of action was not barred under either the five-year or the 10-year statute of limitations.

■ Respondents next contend that the circuit court erred in not applying the Statute of Frauds because all of the terms of the contract for the sale of land were not in writing. What defendants failed to consider is that the instant case is enforcement of a settlement agreement between the parties. Our supreme court authorized the agreement by finding the quick-take issues moot due to the March 20, 1977, settlement agreement. (See *Department of Transportation v. Schien* (1978), 72 Ill. 2d 287, 381 N.E.2d 241.) Bartelsmeyer testified that the parties agreed on an overpass to be built as specified in petitioners' exhibits 1 through 4 and that petitioners were never told plans were subject to change. Under these circumstances, the Statute of Frauds argument is a red herring, and the circuit court was correct in not applying it.

■ Finally, defendants maintain that even assuming, *arguendo*, that there is an enforceable agreement to build an overpass, the Department cannot do so without Federal approval or sufficient funds. Petitioners respond, and we agree, that defendants failed to cite any criteria which would prevent the Federal Highway Administration from approving petitioners' overpass. We will not refuse to enforce the settlement agreement on these speculative grounds.

## III

Petitioners reached a good-faith settlement with our State to resolve the underlying eminent domain proceeding. Petitioners fulfilled their obligations and trusted the State to fulfill its obligations. After refusing to do so, the State aggressively attempted to evade compliance with its obligations both in the circuit court and this court. The citizens of our State deserve better treatment from our government.

For the foregoing reasons, the judgment of the circuit court of St. Clair County is affirmed.

Affirmed.

RARICK, J., concurs.

PRESIDING JUSTICE LEWIS, specially concurring:

I am very concerned about the conduct of the State in this case, and, so, while I agree with the majority ruling, I feel it necessary to express my misgivings.

The Bill of Rights in the Constitution of the State of Illinois of 1970, article I, section 15, provides:

"Private property shall not be taken or damaged for public use without just compensation as provided by law. Such compensation shall be determined by a jury as provided by law." (Ill. Const. 1970, art. I, § 15.)

The legislature provided by law that any party may have a trial by jury to determine the just compensation for damages upon application made to the court. 735 ILCS 5/7—101 (West 1992).

The State in this case agreed, as part of the compensation for the taking and damage to plaintiffs' land, to build an overpass on plaintiffs' land. If the State had not induced the plaintiffs into settling, the plaintiffs would have been able to submit the amount of compensation to a jury. Now the State is blatantly attempting and persisting in denying the plaintiffs their constitutional right to a trial by jury to determine "just compensation" for the land and the

damage to the remainder that the State has seized by reneging on the contract and arguing that only the Court of Claims can now set the just compensation. We should not and cannot sanction a circumvention of the constitutional rights of a citizen of this State.

This issue could arise frequently, and so we should put a stop to it here and now, not only for the benefit of future landowners, whose land is taken involuntarily, but also because we should not, as a matter of public policy, allow the State to renege on its promises. The State may agree in many instances to provide access, drainage, landfill, leveling of the land, a lake where dirt or rock was excavated, and so forth, as part of the compensation to the landowner for land taken or damaged. The landowner may take less cash or even no cash for the land taken in return for the State's promise to provide certain improvements to the remainder. We do not know in this case, for instance, if the plaintiffs settled for less than they would have, because they believed that the overpass would possibly increase the value of the remainder of their land. Without the overpass, two pieces of property with roads that dead-end at Interstate 255 might be worth considerably less than two pieces of property connected by a highway and an overpass.

If the State reneges on its promise, then, according to the State's argument, the only recourse for the property owner is to liquidate his loss through the Court of Claims. The State could bypass a landowner's right to a trial by jury to determine just compensation for property taken or damaged simply by duping or suckering a landowner into signing a contract whereby the State promises to do many wonderful things on the landowner's property in lieu of cash.

The Court of Claims does not have jurisdiction to determine just compensation for land taken or damaged by the State in eminent domain cases. However, what the State is asking this court to do in reality is to transfer the jurisdiction of setting the just compensation for the damage to the plaintiffs' land from the jury to the Court of Claims.

We also are aware of cases where claims have been denied in the Court of Claims because of insufficient funding by the legislature. (See *State Employees' Retirement System v. State* (1984), 37 Ill. Ct. Cl. 288; *Board of Education of the Illinois Valley Central Unit District No. 321 v. State* (1982), 35 Ill. Ct. Cl. 716; *Loewenberg/ Fitch Partnership v. State* (1986), 38 Ill. Ct. Cl. 227.) So, not only is the State attempting to maneuver the landowner into a position whereby the Court of Claims determines the just compensation, the State may also be maneuvering the landowner into a position whereby the landowner receives no compensation for the taking or damaging of his land by the State.

176

If the State does not wish to meet its contractual obligations to build the overpass, then it should at least have the decency to afford the property owner his constitutional right to a trial by jury by refiling the eminent domain action. If we had ruled in favor of the State in this case, what sensible and cautious property owner would dare enter into a settlement with the State in eminent domain proceedings?