SOUTHWESTERN ILLINOIS DEVELOPMENT AUTHORITY v. MASJID AL-MUHAJIRUM, etc. - rec'd 01/11/01

(text box: 1) NO. 5-99-0545

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

________________________________________________________________________

SOUTHWESTERN ILLINOIS DEVELOPMENT )  Appeal from the

AUTHORITY, A Municipal Corporation, )  Circuit Court of

)  St. Clair County.

     Plaintiff-Appellee, )

)

v. )  Nos. 99-ED-5 & 99-ED-8

)

MASJID AL-MUHAJIRUM, An Illinois Religious ) 

Corporation, and RUTH McGEE, )

)

     Defendants-Appellants, )

)

and )

)

ST. CLAIR COUNTY TRUSTEE, ST. CLAIR )

COUNTY, UNION PLANTERS BANK, f/k/a )

MIDAMERICA BANK & TRUST COMPANY OF     )

EDGEMONT, THE VILLAGE OF SAUGET, and )

UNKNOWN OWNERS, )  Honorable 

)  Alexis D. Otis-Lewis,

     Defendants. )  Judge, presiding.

________________________________________________________________________

JUSTICE KUEHN delivered the opinion of the court:

This is a case where the Southwestern Illinois Development Authority (SWIDA) used its advertised power of eminent domain to transfer ownership of property from one private entity to another.  SWIDA took property owned by an Illinois not-for-profit religious corporation, the Masjid Al-Muhajirum, and Ruth McGee (collectively, the Mosque), and transferred it to a limited partnership composed of private investors.  The partnership was formed to acquire and amass a large tract of East St. Louis land.  The land acquisition was to be the first step of an ambitious development project.  The new owners of the Mosque's land intend to use it, along with numerous other adjoining tracts of land acquired without SWIDA assistance, to build a multimillion-dollar, mixed-income residential complex.  The construction, funded with private venture capital, would completely renovate a run-down area of East St. Louis, Illinois, an area that the city has designated as blighted.  The planned transformation of an area of urban decay and ruin into a massive residential complex has a motive long uncommon to the land in question.  The private investors intend to make money from the housing project.

The owners who lost their land to the limited partnership bring this interlocutory appeal from the St. Clair County circuit court decision that approved SWIDA's eminent-domain quick-take action.  On appeal, they first argue that SWIDA's eminent-domain power under the Southwestern Illinois Development Authority Act (the Act) (70 ILCS 520/1 
et seq.
 (West 1998)) is unconstitutional.  Alternatively, they contend that SWIDA lacks the constitutional authority to take the Mosque's land and convey it to a private party for private profit.  For the reasons that follow, we affirm the circuit court decision.

In 1987, the Illinois General Assembly passed the Act.  Pub. Act 85-59, eff. September 20, 1987.  The legislation created the Southwestern Illinois Development Authority and, among other things, empowered it to quick-take land by eminent domain for conveyance to private developers (see 735 ILCS 5/7-103 (West 1998)).  The legislators encouraged SWIDA to exercise its powers, including the power of eminent domain, "to promote industrial, commercial, 
residential
, service, transportation[,] and recreational activities and facilities ***."  (Emphasis added.)  70 ILCS 520/2(g) (West 1998).  The stated public purpose of the Act is to reduce "the evils attendant upon unemployment" and to enhance "he public health, safety, morals, happiness[,] and general welfare of this State."  70 ILCS 520/2(g) (West 1998).

SWIDA advertises that it will condemn land at the request of private developers in order to advance its legislative mandate, provided that those developers pay certain fees and defray certain expenses. 

The Mosque is a not-for-profit religious corporation, with its temporary place of worship located at 1823 Baugh Avenue in East St. Louis, Illinois.  It purchased several run-down properties adjacent to and near this temporary place of worship, for the purpose of developing the area for the Muslim community.  Its expectations included the construction of a new place of worship, a cultural center, parking facilities, a recreational center, and some commercial developments.  However, SWIDA filed its quick-take petition before the Mosque had taken any action to implement these intentions.  The properties acquired were in a state of blight when purchased by the Mosque and had deteriorated further during the Mosque's ownership. 

The Parsons Place limited partnership, a private entity, engaged in a course of land acquisition for a residential mixed-income development called the Parsons Place Project.  The main developers of the Parsons Place Project are McCormack Baron and the Emerson Park Development Corporation.  The Parsons Place Project developers acquired numerous properties surrounding the Mosque's land.  The Mosque properties were needed to fulfill the development's design.  The developers asked SWIDA to exercise its quick-take powers to take this land from the Mosque and convey it to the Parsons Place Project in order to proceed with their plans.  Initially, SWIDA encouraged the Parsons Place Project developers to negotiate directly with the Mosque.  Several meetings took place between Parsons Place Project developers and the Mosque regarding an open market sale of the property.  No agreement could be reached.  

On March 25, 1999, SWIDA passed a resolution authorizing the use of its eminent-domain powers to take the Mosque's land for the Parsons Place Project.  The resolution stated that one of the purposes of the taking would be to eliminate slums and urban blight. On May 20, 1999, SWIDA filed a quick-take proceeding.  

On June 18, 1999, the Mosque filed a traverse and motion to dismiss.  The traverse and motion to dismiss alleged that the parcels targeted for condemnation were not properly the subject of eminent-domain proceedings and that SWIDA lacked the constitutional authority to exercise the power of eminent domain.

On July 14, 1999, the circuit court entered an order setting preliminary just compensation.  On July 15, 1999, the circuit court denied the defendants' traverse and motion to dismiss and entered an order that vested SWIDA with title to the land.  The circuit court found that the property in question was blighted and that SWIDA had the authority to exercise the right of eminent domain.  On August, 13, 1999, the erstwhile owners filed notice of this appeal. 

The questions presented in this case require us to apply a mixed standard of review. On the one hand, the trial court's finding that the property in question was blighted is a finding that we will not disturb unless it is contrary to the manifest weight of the evidence.  See 
Zeitz v. Village of Glenview
, 304 Ill. App. 3d 586, 590, 710 N.E.2d 849, 854 (1999); 
Village of Round Lake v. Amann
, 311 Ill. App. 3d 705, 712, 725 N.E.2d 35, 43 (2000).  However,  the overriding question of whether an eminent-domain action is constitutionally sound is a matter for 
de novo
 review.  
Lake Louise Improvement Ass'n v. Multimedia Cablevision of Oak Lawn, Inc.
, 157 Ill. App. 3d 713, 716, 510 N.E.2d 982, 984 (1987); 
In re Department of Transportation
, 173 Ill. App. 3d 730, 734, 527 N.E.2d 958, 961 (1988). In challenging the constitutionality of SWIDA's eminent-domain power, the Mosque relies heavily upon a special concurring opinion filed with this court's decision in 
Southwestern Illinois Development Authority v. National City Environmental, L.L.C.
, 304 Ill. App. 3d 542, 554, 710 N.E.2d 896, 904 (1999) (Kuehn, J., specially concurring), 
appeal allowed
, 185 Ill. 2d 667, 720 N.E.2d 1106 (1999).  Its reliance upon the words and ideas expressed in that special concurrence is misplaced.  Obviously, those words and ideas do not speak for this court.  The majority in 
National City Environmental, L.L.C.
 refused to address the constitutionality of SWIDA's eminent-domain powers, abiding by a self-imposed constraint established by this court in 
Southwestern Illinois Development Authority v. Vollman
, 235 Ill. App. 3d 32, 600 N.E.2d 926 (1992).  The majority adhered to precedent that set the timing for any constitutional challenge to a condemnation action and, in so doing, underscored the limits of an interlocutory appeal of this nature.  Those limits remain untouched by the special concurring opinion and call for a constitutional challenge to await a conclusion of the eminent-domain proceedings.  
Vollman
, 235 Ill. App. 3d at 37, 600 N.E.2d at 929.

Additionally, the Mosque misapprehends the scope of what was said in the special concurring opinion.  The special concurring opinion points out that the Act empowers SWIDA to do what it did in that case–exercise eminent domain without a stated public purpose other than the SWIDA's preference for how a given piece of land should be developed and who should develop it.  
National City Environmental, L.L.C.
, 304 Ill. App. 3d at 555, 710 N.E.2d at 905-06.  The singular facts of that case were essential to the constitutional analysis.  SWIDA used its eminent-domain power to convey its favor upon a racetrack developer who needed someone else's land in order to build a cheaper parking lot.  
National City Environmental, L.L.C.
, 304 Ill. App. 3d at 545, 710 N.E.2d at 899.  The developer had more expensive ways to provide for additional parking, but it utilized governmental power to hold down its costs by taking land that it could not otherwise have obtained.  
National City Environmental, L.L.C.
, 304 Ill. App. 3d at 552, 710 N.E.2d at 903.  SWIDA took a valuable piece of private property, located in a boom area already teeming with economic prospect and potential for private development, and conveyed it to a third party.  The taking benefitted that party at the previous landowner's expense.  The key to the case lies in the fact that SWIDA exercised its eminent-domain power purely in the name of further economic development of the area.  Such use of eminent domain, a use clearly sanctioned under the Act, exceeds those public purposes normally associated with taking private property and conveying it to a private third party.  As the special concurrence noted, "While this legislation offers unquestionable potential for the kind of social and economic advancement that follows capital investment, it exceeds sacred parameters when it empowers SWIDA to lure private investors with the promise of 
any prime land
 those investors want to take."  (Emphasis added.)  
National City Environmental, L.L.C.
, 304 Ill. App. 3d at 556, 710 N.E.2d at 906.

Here, the question presented would be far different.  The property taken in this case is located in the heart of a blighted area.  The property includes unoccupied and unattended slums.  The properties are virtually uninhabitable and, from their look, are no doubt rat-infested.  The public purpose that underlies this condemnation has a much sounder footing, which brings us to the issue at hand–whether SWIDA's exercise of the eminent-domain powers granted it by the legislature was proper in this case.                   

SWIDA filed a petition that set forth its reasons for the quick-take.  One of the stated purposes for the taking was the elimination of slums and blight.  Having examined the photographic exhibits in support of this claim, we cannot accept the Mosque's argument that the land in question was not in a blighted state when SWIDA initiated the condemnation.  In fact, the resident imam of the Mosque identified the photographs of those parcels targeted for condemnation and acknowledged that the area was "still blighted."  His acknowledgment was understandable.  The buildings depicted in the photographs are in a total state of ruin and decay.  The grounds surrounding the buildings are strewn with rusted junk, discarded cans, bottles, and garbage bags.  It appears that the derelict buildings were so dilapidated that certain uncaring people, rightfully concluding that they could not house human occupants, treated their unkept grounds as a fit place to dump trash.  

Contrary to the Mosque's argument, the fact that these properties adjoin a place of worship does not change the basic character of the surroundings.  The basic character of the locale is still one of ruin and urban decay.  The area is blighted.  The exercise of eminent-domain powers for the purpose of eliminating slums or blighted property is a proper use for a valid public purpose.  See 
City of Chicago v. Walker
, 50 Ill. 2d 69, 277 N.E.2d 129 (1971).

The Mosque seems to imply that the taking is still infirm because the properties condemned were conveyed to another private party intent on turning a profit from the land.  However, if a public purpose is served, it makes no difference that the condemning body chooses to transfer title, use, or possession of the acquired property to a private, for-profit entity to carry out that purpose.  
Illinois State Toll Highway Comm’n v. Eden Cemetery Ass'n
, 16 Ill. 2d 539, 546, 158 N.E.2d 766, 769-70 (1959); 
Hawaii Housing Authority v. Midkiff
, 467 U.S. 229, 243-44, 81 L. Ed. 2d 186, 199, 104 S. Ct. 2321, 2331 (1984).  We are quite sure that the legislature did not expect SWIDA to build houses.  

Here, the condemnation and transfer to the Parsons Place Project will effectuate the kind of positive change that was clearly contemplated by the Act.  It will turn a blighted area into a vast private housing complex, something of great need to the residents of East St. Louis.  A clear public good supports SWIDA's action.  New housing raises further prospect of additional development of decayed areas that lie at its parameters.  

We agree with the circuit court's finding that the properties targeted for condemnation were in a blighted area.  We further agree with SWIDA that the quick-take action and conveyance to the Parsons Place Project will serve to eliminate slums and blight.  Accordingly, we affirm the circuit court's decision.    

Affirmed.

RARICK and HOPKINS, JJ., concur.

                                      

COMMENTS AND ANNOTATIONS
Text Box 1:

TEXT BOXES
NOTICE

Decision filed 01/30/01.  The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.