THE CITY OF CHICAGO, Plaintiff-Appellee, v. HARRIS TRUST AND SAVINGS BANK, t/u/t No. 38310, *et al.*, Defendants (Whiteco Outdoor Advertising, a Division of Whiteco Industries, Inc., Successor Assignee of All-Sign Corporation, Assignee of Diamond Vision, Inc., Defendant-Appellant).

First District (4th Division)   No. 1—02—3213

Opinion filed February 11, 2004.

Robert J. Weber, of Chicago, for appellant.

Mara S. Georges, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and Meera Werth, Assistant Corporation Counsel, of counsel), for appellee.

PRESIDING JUSTICE QUINN delivered the opinion of the court:

This appeal arises from a declaration and motion to abandon filed by plaintiff, City of Chicago (the City), seeking to abandon its taking of a leasehold interest in an outdoor billboard sign utilized by defendant, Whiteco Outdoor Advertising, now known as Lamar Advertising Company (Whiteco).[1] Whiteco sells space on its billboards to third parties in order to convey commercial and noncommercial advertisements to the public. The circuit court approved the declaration, granted the City's motion to abandon and ordered the City to pay the reasonable expenses incurred by Whiteco. Whiteco appeals. For the following reasons, we affirm.

## BACKGROUND

On July 13, 1999, the City instituted condemnation proceedings to acquire property located at the northeast corner of Randolph and

---

[1] Whiteco is the only named defendant involved in this appeal.

State Streets (subject premises) as part of the Central Loop Tax Increment Financing Redevelopment Project (the project). The subject premises consists of an improved, two-story and basement commercial building with an outdoor, rooftop advertising sign. The then-legal owner of the subject premises was Harris Trust and Savings Bank, as trustee under trust number 38310, the beneficiary of which is Helga M. Dobbs, individually and as trustee of the George R. Dobbs Trust (collectively, the owner). The owner leased to 11 tenants, including 10 retail spaces within the building and Whiteco, which utilized the outdoor advertising sign on the roof. All the tenants, except Whiteco and Walgreen Company (Walgreens), had leases that contained condemnation clauses.

On March 2, 2000, pursuant to an agreed partial judgment, the City agreed to pay the owner compensation in the amount of $7.9 million for all right, title and interest in the subject premises, with the exception of the leasehold interests of tenants Whiteco and Walgreens. Whiteco's lease expired on November 20, 2001, while Walgreens' lease terminates on October 31, 2009.

The lease under which Whiteco maintained its billboard originally was executed between the owner and Diamond Vision, Inc. (Diamond), for a term of seven years, from December 1, 1984, until November 30, 1991 (subject lease). The subject lease provided that the lessee, Diamond, had the right to erect and maintain advertising signs and further stated that such signs were to remain the personal property of the lessee and were to be removed by the lessee upon termination of the lease. In addition, the subject lease stated that the lessor had the right to terminate the lease "to demolish or add to the Building by the erection of an additional floor or floors above the existing roof level," provided that the lessee is given 365 days' notice.

On June 8, 1988, Diamond assigned the subject lease and conveyed the billboard to All-Sign Corporation (All-Sign). All-Sign entered into an agreement with the owner on August 23, 1988, extending the termination date of the subject lease to November 30, 1996. In March 1995, the owner and All-Sign executed a lease amendment and extension agreement to extend the termination date to November 30, 2001. The lease amendment provided, *inter alia*, that the lessee was required to remove its trade fixtures within seven days prior to the expiration of the lease.

On April 16, 1996, Whiteco paid All-Sign $225,000 for the assignment of the subject lease and conveyance of the billboard.

Thereafter, on February 7, 1999, the city council (the Council) adopted an ordinance approving the project and defining the project area, which included the subject premises. On May 1, 2000, the City

deposited $7.9 million into the Cook County treasury pursuant to the March 2, 2000, agreed partial judgment. On August 30, 2000, the Council enacted the ordinance, which authorized acquisition of all interests in the subject premises on or before October 15, 2000.

On October 12, 2000, in order to facilitate the existing schedule of the project, the City sought to acquire Walgreens' and Whiteco's leasehold interests by a quick-take proceeding, pursuant to section 7—103 (735 ILCS 5/7—103 (West 2002)) of the Code of Civil Procedure (Code). Following a hearing, the circuit court determined the preliminary just compensation for Whiteco's leasehold interest totaled $92,400 and ordered the City to deposit that sum with the Cook County treasurer. The City deposited the funds with the treasurer on February 6, 2001.

On February 15, 2001, the circuit court entered an order vesting title to Whiteco's leasehold interests in the City and requiring that Whiteco vacate the subject premises and tender possession to the City on or before June 15, 2001. The court entered a similar order with respect to Walgreens after determining the preliminary just compensation for Walgreens' leasehold and ordering the City to deposit that sum with the Cook County treasurer.

On April 6, 2001, Whiteco filed a petition for withdrawal of award of preliminary just compensation to obtain the $92,400 deposited with the Cook County treasurer. The City then moved to abandon its taking of Whiteco's leasehold interest on April 10, 2001, arguing that a condemnor may abandon a taking at any time until it has taken both title and possession of the property to be acquired. The City explained in its motion that the redevelopment project for which the City required title and possession of the subject leasehold had experienced a significant delay, thereby permitting continued possession by Walgreens and Whiteco of their leasehold premises beyond June 15, 2001, and beyond the November 30, 2001, termination date of Whiteco's lease. The City sought the return of the $92,400 preliminary just compensation it had deposited with the Cook County treasurer and asked the circuit court to determine the reasonable attorney fees, costs and expenses incurred by Whiteco in defending the condemnation proceeding. Whiteco objected to the abandonment, asserting the City is not authorized to abandon after it had acquired title of Whiteco's leasehold.

On May 21, 2002, the circuit court conducted an evidentiary hearing on the economic impact of the taking upon Whiteco. Both parties presented evidence regarding the value of Whiteco's leasehold interest. Rodolfo Aguilar, a real estate appraiser, testified on behalf of Whiteco that the fair market cash value of the billboard is $753,000.

Aguilar's opinion was unclear with respect to whether he based his findings on the assumption that Whiteco's lease would have been extended indefinitely. Fred R. Tadrowski, a real estate appraiser, testified on behalf of the City that the value of the billboard on the date of the taking was $92,400 and that the depreciated value of the billboard on the subject lease's termination date was $31,600.

On May 29, 2002, the parties stipulated that Whiteco could continue its possession of the leasehold premises under the terms of the subject lease pending 30 days' written notice of termination by either party. The parties further agreed that the stipulation could not be considered as evidence in connection with the existing dispute between the parties relative to the propriety of the City's abandonment of its acquisition of the leasehold, or its valuation.

On September 19, 2002, the circuit court entered a memorandum decision and judgment, which included numerous findings regarding the City's motion to abandon. With respect to the issue of whether the City took possession of Whiteco's leasehold interest, the court found that the City "did not take possession of the leasehold interest when it condemned the fee. The Order Vesting Title reserved transfer of possession to June 15, 2001. The City abandoned the acquisition of [Whiteco's] interest on April 10, 2001, prior to the June 15, 2001 transfer date." Although the court agreed that the billboard is a trade fixture, it disagreed that the City had taken possession. The court noted that Whiteco presently has possession and control of the billboard and the advertisements of its clients, which have appeared without interruption. According to the court, under the express terms of the subject lease, Whiteco has the right and obligation to remove the billboard at its own expense when the lease terminates, but that right and obligation did not vest until termination of the lease. The court noted that payment of rent to the management company designated by the City and use of the billboard with advertising provided by a Whiteco client are evidence that the subject lease was not terminated.

In addition, the circuit court ruled that the City had the authority to abandon the taking of Whiteco's leasehold after it had acquired title. The court held:

"A condemnor can abandon a condemnation after it has acquired title through a quick-take proceeding. In conventional eminent domain proceedings possession of property cannot be transferred until final compensation has been determined, but the proceeding entered into between Whiteco and the City was a quick-take. *** The quick-take proceeding is a separate proceeding within the condemnation case, and provides a methodology for vesting of title

and tender of possession upon payment of a preliminary award by the Court, all prior to the determination of final just compensation by a jury, if required, and entry of a final judgment. *** Under the quick-take statutory scheme, possession is the last step in the relief sought by the condemnor."

Finally, concerning Whiteco's contention that the City acted in bad faith, the circuit court stated, "[t]he plans of the [C]ity did change, particularly with respect to the timing of the development, [which] was the basis for the City's then perceived need to implement the quick-take proceeding, but while title was vested possession has still not occurred. Further evidence that the City did not act in bad faith is the inclusion, in its abandonment of the acquisition of the leasehold interest, a request that the Court determine those reasonable expenses incurred by [Whiteco]." The court approved the City's declaration of abandonment, granted the City's motion to abandon and ordered the City to pay the reasonable expenses incurred by Whiteco. Whiteco filed a timely notice of appeal.

Before addressing the merits of Whiteco's appeal, the City contests this court's jurisdiction to review this case because the September 19, 2002, order approving the City's abandonment was not a final judgment. The City notes that the order contains no express finding by the circuit court pursuant to Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)) that there is no just reason to delay an appeal. The City maintains that the proceedings before the circuit court were not yet concluded because condemnation proceedings against Walgreens were ongoing.[2] The City also argues that this case is not appealable under the supreme court rule governing interlocutory appeals (166 Ill. 2d R. 307(a)(7)). In addition, the City asserts that this court should dismiss Whiteco's appeal because it failed to include a jurisdictional statement in its brief, in violation of Supreme Court Rule 341(e) (188 Ill. 2d 341(e)).

Whiteco has not responded to these arguments, but in oral argument before this court, Whiteco's counsel stated that Rule 307(a)(7) is inapplicable. Whiteco's notice of appeal states that it appeals the September 19, 2002, memorandum decision and judgment pursuant to Supreme Court Rules 301 and 303 (155 Ill. 2d Rs. 301, 303). A review of the record shows that the September 19, 2002, circuit court decision

---

[2]The City asks this court to take judicial notice of a March 4, 2003, circuit court order entering final judgment on the action to condemn Walgreens' leasehold, which is contained in an appendix to the City's brief. This order is not included in the record. A reviewing court need not take judicial notice of contents found in the appendix attached to a brief, but not included in the record. *Denny v. Haas*, 197 Ill. App. 3d 427, 429-30, 554 N.E.2d 727 (1990).

contains no language indicating a final judgment pursuant to Rule 304(a).

■ Rule 301 allows appeals from final judgments of a circuit court in civil cases as a matter of right, and Rule 303 sets the time frame for filing the notice of appeal after the entry of final judgment. 155 Ill. 2d Rs. 301, 303. "A judgment is considered final 'if it terminates the litigation between the parties on the merits or disposes of the rights of the parties, either on the entire controversy or a separate part thereof.' " *In re Curtis B.*, 203 Ill. 2d 53, 59, 784 N.E.2d 219 (2002), quoting *R.W. Dunteman Co. v. C/G Enterprises, Inc.*, 181 Ill. 2d 153, 159, 692 N.E.2d 306 (1998). "A final order is one which sets or fixes the rights of a party." *Curtis B.*, 203 Ill. 2d at 59.

■ Here, the circuit court determined whether the City had the right to abandon its eminent domain action to take Whiteco's leasehold interest. The circuit court's memorandum decision and judgment is a final order and not interlocutory under Rule 307(a)(7). Further, Rule 304(a) is inapplicable because neither multiple parties nor multiple claims were involved in the City's declaration to abandon and motion to abandon its taking of Whiteco's leasehold interest. Because the circuit court's memorandum decision and judgment set the right of the City to abandon its right to Whiteco's leasehold, the order was final pursuant to Rule 301 and Whiteco's notice of appeal, therefore, confers jurisdiction upon this court. While the circuit court's memorandum decision and judgment did not specify the reasonable expenses incurred by Whiteco, neither party raises this issue as a basis to find that the circuit court's memorandum decision and judgment is not a final order. In addition, although Whiteco has failed to include a jurisdictional statement in violation of Rule 341(e), in the interest of judicial economy, the merits of Whiteco's appeal will be considered.

## ANALYSIS

### I

Whiteco initially asserts that the circuit court erred by granting the City's motion to abandon its condemnation of Whiteco's leasehold. Whiteco argues that, once the City acquired title of the subject premises, it had no authority to abandon. Whiteco contends that section 7—110 (735 ILCS 5/7—110 (West 2002)) of the Code specifically bars dismissal of a complaint in a condemnation or abandonment of a condemnation proceeding after the condemnor has taken possession pursuant to an order of taking. Whiteco states in its opening brief, however, that "[n]o one disputes that [Whiteco] retained physical possession and use of the [billboard]—albeit at the pleasure of the City."

Whiteco argues that physical possession of the billboard is irrelevant due to the City's destruction of the lease by its taking of the subject premises.

Whiteco, citing section 7—105 (735 ILCS 5/7—105 (West 2002)) of the Code, contends that, in the context of this case, possession following a quick-take proceeding occurred after the payment of preliminary just compensation. Whiteco, without providing legal authority, notes that the "typical chronology" of a quick-take scenario is as follows: (1) setting preliminary compensation; (2) deposit of the compensation with the county treasurer; (3) vesting of title; and (4) tender of possession that may occur "upon the vesting of title or at a mutually agreeable date in the future." Whiteco concedes that this framework "appear[s] to support the order of the trial court," but nevertheless argues that legislative history relating to abandonment reflects that the court's order was improper.

The City, citing Code section 2—1009(a) (735 ILCS 5/2—1009(a) (West 2002)), responds that, at any time before trial or hearing begins and upon notice to the opposing party, it is entitled to dismiss its action without prejudice, by order filed in the cause. The City argues that, under section 2—1009(a), it obtained an appropriate dismissal. The City maintains that, because it no longer needed to acquire Whiteco's leasehold on an expedited basis, it appropriately moved to abandon its condemnation of Whiteco's leasehold. Relying upon section 7—110 of the Code, the City contends that a quick-take proceeding may be terminated by the condemnor prior to the time that it takes possession of the property at issue.

The circuit court's decision to grant the City's motion to abandon will not be disturbed unless it is contrary to the manifest weight of the evidence. *Southwestern Illinois Development Authority v. Al-Muhajirum*, 318 Ill. App. 3d 1005, 1007, 744 N.E.2d 308 (2001). A decision is against the manifest weight of the evidence if the facts clearly demonstrate that the court should have reached the opposite conclusion. *In re D.M.*, 336 Ill. App. 3d 766, 773, 784 N.E.2d 304 (2002). Whether the City's motion to abandon its eminent domain action is constitutionally sound is reviewed *de novo*. *Al-Muhajirum*, 318 Ill. App. 3d at 1008. In addition, a *de novo* standard of review is applied to issues of statutory construction. *Paris v. Feder*, 179 Ill. 2d 173, 177-78, 688 N.E.2d 137 (1997). A court's primary objective in construing a statutory provision is to determine and give effect to the legislature's intent. *Kraft, Inc. v. Edgar*, 138 Ill. 2d 178, 189, 561 N.E.2d 656 (1990). The language of the provision is the best evidence of that intent and must be given its plain and ordinary meaning. *Paris*, 179 Ill. 2d at 177.

■ Code section 7—110 provides, *"[a]fter* the plaintiff has taken possession of the property *pursuant to the order of taking,* the plaintiff shall have no right to dismiss the complaint, or to abandon the proceeding, as to all or any part of the property so taken, except upon the consent of all parties to the proceeding whose interests would be affected by such dismissal or abandonment." (Emphasis added.) 735 ILCS 5/7—110 (West 2002).

The statutory language provided in section 7—110 of the Code is clear and unambiguous and, therefore, will be given effect without resort to other aids of construction. *Lulay v. Lulay,* 193 Ill. 2d 455, 466, 739 N.E.2d 521 (2000). Following the plain and ordinary language in section 7—110 (*Lulay,* 193 Ill. 2d at 466), abandonment of the condemnation proceeding is precluded only after a plaintiff has taken possession of the property. 735 ILCS 5/7—110 (West 2002). If the intent of the legislature was to preclude abandonment following the payment of preliminary just compensation, section 7—110 would have included such language.

Addressing the cases upon which Whiteco relies, *St. Louis & Southeastern Ry. Co. v. Teters,* 68 Ill. 144 (1873), *City of Chicago v. Barbian,* 80 Ill. 482 (1875), and *City of Chicago v. Shepard,* 8 Ill. App. 602 (1881), none involved a quick-take action pursuant to section 7—103 of the Code, which originally was enacted as part of the Eminent Domain Act (Act) on July 11, 1957 (Ill. Rev. Stat. 1957, ch. 47, par. 2.1). Further, each of the cases actually favors the City's position and reaffirms the propriety of the circuit court's judgment.

First, in *Teters,* the condemnor sought a railroad right-of-way over private farm property and took possession of the property *prior* to judgment awarding the owner compensation. The supreme court held that when the condemnor has taken possession of the subject property before a trial to determine the depreciation value of the property, the condemnor need not procure information providing the names of all persons interested in the subject property, or provide for the court the amount of compensation requested by the affected owners. If the condemnor takes possession of the subject property before such a trial, "right and justice would require that a judgment should be rendered against the [condemnor] for the damages found by a jury, and an execution should be awarded for its collection." *Teters,* 68 Ill. at 150. Pertinent to this case, however, the court also stated, "where the [condemnor] has not appropriated the land at the time of trial, it would be improper to render a judgment for the recovery of the money, or to award execution, because it could not be known that the [condemnor] will ever enter upon the land. *** Although the petition [for condemnation] has been filed, the damages assessed, and the

order of the court pronounced and entered, the money must be paid before the right to enter attaches, and until they pay the damages, *they have the right to abandon* \*\*\*." (Emphasis added.) *Teters*, 68 Ill. at 150-51. Accordingly, *Teters* stands for the proposition that a condemnor can abandon the subject property until he or she has either taken possession or, if the condemnor has not yet taken possession, he or she has a right to abandon until damages as assessed by a jury are paid. This proposition does not support Whiteco's argument.

Likewise, in *Barbian*, the supreme court held that a proceeding to condemn property for public use may be abandoned even after damages are assessed, if before payment thereof or deposit for the owner, the property has remained unmolested. *Barbian*, 80 Ill. at 485, 487-88. The appellate court in *Shepard* followed both *Teters* and *Barbian*, stating that "the applicant for condemnation may, at any time before payment of the compensation, or the appropriation of the property by taking and retaining possession, discontinue and abandon the improvement and all proceedings to carry it into effect." *Shepard*, 8 Ill. App. at 608.

Whiteco argues that the City's deposit of $92,400 for the preliminary just compensation of Whiteco's leasehold interest terminated the City's right to abandon the condemnation proceedings. Whiteco's reliance upon the above-discussed cases and its argument that payment of preliminary just compensation precludes abandonment are misplaced.

In *Department of Public Works & Buildings v. Vogt*, 51 Ill. App. 3d 770, 778, 366 N.E.2d 310 (1977), the State appealed a circuit court judgment granting defendant's motion to dismiss a petition to take certain land pursuant to the Act (Ill. Rev. Stat. 1975, ch. 47, par. 1 *et seq.*). The State petitioned to take land owned by defendants to construct a bridge. The court entered an order finding that the State had the authority to exercise a quick-take and set an amount for preliminary just compensation. After the State deposited the requisite amount with the county treasurer, the court entered an order vesting the State with title to the property.

The *Vogt* court addressed the finality of the quick-take order with respect to the State's right to proceed. The State argued on appeal that the quick-take order was a final order which could not be vacated absent an appeal in accordance with the Act. Noting section 2.8 of the Act (Ill. Rev. Stat. 1971, ch. 47, par. 2.8), which preceded section 7—110 of the Code and contained nearly identical language, the court found that the State "can abandon its project or dismiss the proceeding up to the time when possession of the questioned premises has taken place." *Vogt*, 51 Ill. App. 3d at 777. According to the court, because the State had neither taken possession nor initiated construction on the

property in question, it could dismiss its suit for defendant's property and recover its money even though more than five years had passed since title became vested in the State. *Vogt*, 51 Ill. App. 3d at 777; see also *Department of Public Works & Buildings v. Greenlee*, 63 Ill. App. 2d 425, 431, 211 N.E.2d 771 (1965).

In *Chicago, St. Louis & Western R.R. Co. v. Gates*, 120 Ill. 86, 91, 11 N.E. 527 (1887), another case relied upon by Whiteco, the landowner had filed a cross-petition to recover damages to property not actually taken. The *Gates* court held, "[h]ad the rights of the parties,—the petitioner and the landowner,—become fixed by the proceedings which had been instituted, a different question might arise ***. The filing of the petition conferred no rights in the land sought to be taken, on the railroad company, except the bare right to proceed and condemn." 120 Ill. at 91.

■ In the instant case, the City filed its motion to abandon its condemnation of Whiteco's leasehold on April 10, 2001. The February 15, 2001, order vesting title fixed the rights of the parties by vesting the City with title in Whiteco's leasehold, but reserving the City's right to possession until June 15, 2001. There is no record evidence showing the City has ever taken possession of the billboard. Instead, the record shows that Whiteco enjoyed possession of the billboard and utilized the advertising space for its clients until the date the lease terminated, November 30, 2001, and beyond. Because the City has not yet taken possession of Whiteco's leasehold pursuant to the order vesting title, the City can abandon its taking of Whiteco's leasehold and recover the amount deposited as preliminary just compensation. 735 ILCS 5/7—110 (West 2002). Following section 7—110 of the Code and the above-discussed Illinois authority, the circuit court's decision to grant the City's motion to abandon and approve the City's declaration to abandon was not against the manifest weight of the evidence.

II

Whiteco next contends that it must be given the opportunity to seek just compensation because the City has taken its leasehold interest. Whiteco argues that by paying just compensation to the owner on May 1, 2000, the City acquired title to the subject premises, which constituted "one taking" of the entire subject premises. Whiteco maintains that this taking destroyed the lease, requiring the City to remove the billboard for the project to proceed. In support of its argument, Whiteco notes the circuit court's finding that the billboard was a trade fixture. Whiteco avers it was entitled to just compensation because, as a tenant of the leasehold property, Whiteco had a compensable interest in both the subject lease and the billboard that is protected by both the federal and state constitutions.

The City responds that Whiteco is not entitled to any compensation because the City did not take Whiteco's property. The City maintains that Whiteco has never been deprived of the use or enjoyment of the billboard on the roof of the subject premises. The City argues that because it never had possession of Whiteco's leasehold, Whiteco's attempt to recover compensation for this property should be rejected.

■ ■ The fifth amendment of the United States Constitution and article I, section 15, of the Illinois Constitution both prohibit the taking or damaging of private property for a public purpose without payment of just compensation. U.S. Const., amend. V; Ill. Const. 1970, art. I, § 15. In addition, section 7—101 (735 ILCS 5/7—101 (West 2002)) of the Code provides, "[p]rivate property shall not be taken or damaged for public use without just compensation, and in all cases in which compensation is not made by *** [a] municipality in its respective corporate capacity, such compensation shall be ascertained by a jury." Section 7—101 also states:

"The right to just compensation as provided in this Article applies to the owner or owners of any lawfully erected off-premises outdoor advertising sign that is compelled to be altered or removed under this Article or any other statute, or under any ordinance or regulation of any municipality or other unit of local government, and also applies to the owner or owners of the property on which that sign is erected." 735 ILCS 5/7—101 (West 2002).

In *United States v. Petty Motor Co.*, 327 U.S. 372, 378, 90 L. Ed. 729, 735, 66 S. Ct. 596, 600 (1945), the Supreme Court extended the constitutional protections of eminent domain from the owner of a fee to the owner of a leasehold interest.

In support of its argument, Whiteco relies upon *Almota Farmers Elevator & Warehouse Co. v. United States*, 409 U.S. 470, 35 L. Ed. 2d 1, 93 S. Ct. 791 (1973). There, the lessee had erected extensive buildings and improvements on the condemned property interest. When the government instituted eminent domain proceedings, the lessee had 7¹/₂ years remaining on its lease. Because the government had no need for the lessee's improvements, the value of the improvements was reduced significantly. The lessee contended that this limitation upon compensation for the use of the structures would fail to award what a willing buyer would have paid for the lease with the improvements, since such a buyer would expect to have the lease renewed and continue to use the existing improvements. The lessee sought to recover compensation reflecting the value of the improvements beyond the lease term. The Supreme Court determined the issue of "[w]hether, upon condemnation of a leasehold, a lessee with no right of renewal is

entitled to receive as compensation the market value of its improvements without regard to the remaining term of its lease, because of the expectancy that the lease would have been renewed." *Almota Farmers*, 409 U.S. at 473, 35 L. Ed. 2d at 7, 93 S. Ct. at 794.

The *Almota Farmers* Court held that at the time of the taking, the lessee had an expectancy of continued occupancy of its improvements and that the government was required to compensate the lessee for those interests as measured by what a willing buyer would have paid for the improvements, taking into account the possibility that the lease might be renewed and the improvements used beyond the lease term. 409 U.S. at 477-78, 35 L. Ed. 2d at 9-10, 93 S. Ct. at 796-97.

In the present case, both the facts and findings from *Almota Farmers* do not apply. First, the record shows that Whiteco did not make any improvements to its leasehold. Second, unlike the lessee in *Almota Farmers* and the lessees from another case upon which Whiteco relies, *United States v. Certain Property Located in the Borough of Manhattan*, 388 F.2d 596 (2d Cir. 1967), the governmental entity instituting eminent domain proceedings to take the leasehold property in this case, namely, the City, then sought to abandon its taking. As discussed above, the circuit court properly allowed the City to abandon its taking of Whiteco's leasehold. The *Almota Farmers* Court noted that the constitutional requirement of just compensation derives from the basic equitable principles of fairness and that the lessee should be in no better position than if it had sold its leasehold to a private buyer. *Almota Farmers*, 409 U.S. at 478, 35 L. Ed. 2d at 10, 93 S. Ct. at 797.

Here, compensating Whiteco for its leasehold would place Whiteco in a better position than it would have enjoyed had the City not proceeded with the condemnation because Whiteco never lost possession or use of its property. As noted above, although the February 15, 2001, order vested the City with title to Whiteco's leasehold, the order expressly postponed the City's right to possession to June 15, 2001. The record shows that even after June 15, 2001, Whiteco remained in possession of the leasehold. The record also demonstrates that Whiteco continued to pay rent to the management company designated by the City and used the billboard for advertising for its clients. Whiteco acknowledges that it retained physical possession and use of the billboard. Based on the foregoing, Whiteco should not be compensated for and allowed to benefit improperly from the value of a leasehold of which it continues to maintain possession, enjoyment and use. Accordingly, Whiteco is not entitled to seek just compensation from the City.

## III

■ Whiteco next argues that, even if the circuit court ruled properly with respect to the City's motion to abandon, the City nevertheless should be precluded from abandoning its taking of Whiteco's leasehold because it acted in bad faith. Whiteco contends that the City's justification for the abandonment, the delay in the timetable for completing the project, eventually will require removal of Whiteco from the leasehold. Whiteco, citing *Ad-Ex, Inc. v. City of Chicago*, 247 Ill. App. 3d 97, 617 N.E.2d 333 (1993), asserts that the City and the circuit court are without authority to effect a unilateral reconveyance of Whiteco's leasehold in the event that reconveyance is necessary. The court's findings in *Ad-Ex* do not involve the reconveyance of a leasehold and, therefore, Whiteco's reliance upon this case is misplaced.

The City responds that Whiteco's attempt to avoid the City's abandonment by a "drummed-up" charge of bad faith should be rejected by this court.

In *Chicago, Rock Island & Pacific Ry. Co. v. City of Chicago*, 143 Ill. 641, 647, 32 N.E. 178 (1892), a case relied upon by Whiteco, the supreme court reiterated the general rule that a condemnor may abandon the eminent domain proceedings at any time before compensation is paid or possession is taken. The court, however, also ruled that the City abandoned its taking in bad faith in an attempt to file a new petition for condemnation for the purpose of receiving a more favorable jury finding as to compensation. *Chicago, Rock Island*, 143 Ill. at 646-47.

The case *sub judice* is distinguishable from *Chicago, Rock Island* because there was no previous jury determination of compensation for the leasehold property. Moreover, Whiteco has provided no citation to the record demonstrating evidence of the City's bad faith or legal authority supporting its argument. To the contrary, the circuit court specifically found that the timing of the development, which was the basis of the City's filing of the instant quick-take proceeding, had been delayed. Whiteco's argument that the City acted in bad faith by abandoning its taking of Whiteco's leasehold interest is without merit.

In light of the above, the September 19, 2001, memorandum decision and judgment of the circuit court of Cook County is affirmed. The cause is remanded to the circuit court to determine Whiteco's reasonable attorney fees, costs and expenses pursuant to section 7—123(a) (735 ILCS 5/7—123(a) (West 2002)) of the Code.

Affirmed.

HARTMAN and GREIMAN, JJ., concur.