SOUTHWESTERN ILLINOIS DEVELOPMENT AUTHORITY, Plaintiff-Appellee, v. MASJID AL-MUHAJIRUM, Defendant-Appellant (St. Clair County Trustee *et al.*, Defendants).—SOUTHWESTERN ILLINOIS DEVELOPMENT AUTHORITY, Plaintiff-Appellee, v. RUTH McGEE, Defendant-Appellant (The County of St. Clair *et al.*, Defendants).

Fifth District    No. 5—03—0429

Opinion filed April 16, 2004.

Robert L. Merriwether, Jr., of Merriwether & Associates, of East St. Louis, for appellants.

Harry J. Sterling, of Sterling & Dowling, of Fairview Heights, for appellee.

JUSTICE KUEHN delivered the opinion of the court:

A little more than three years ago, Emerson Park was an area of East St. Louis, Illinois, that suffered from the ravages of time and poverty, an area that testified graphically to the urban decay that can follow a mass exodus of commerce and jobs from a city. Many of its old houses had been condemned and torn down by city officials, leaving weeded and trash-ridden vacant lots. A few of its old residences stood as isolated reminders of a once-thriving residential area. However, they barely stood. The old houses were run-down and dilapidated, all that was left of a working-class neighborhood that ceased working long ago.

Masjid Al-Muhajirum (the Mosque) is a not-for-profit religious corporation with its temporary place of worship located in the Emerson Park area. The Mosque acquired several properties, some adjacent to, and others nearby, its temporary church site, with plans for developing the area for the Muslim community.

Ruth McGee owned a house in the blighted Emerson Park area.

Several years back, Southwestern Illinois Development Authority (SWIDA), a state agency charged with the task of promoting economic development in the Metro East region of southern Illinois, commenced quick-take proceedings to condemn the properties of Ms. McGee and the Mosque. The condemnation proceedings were launched on behalf of developers who wanted to renovate the Emerson Park area and build a large, upscale housing community that would replace the slums that existed. The project made the Emerson Park area of East St. Louis, Illinois, into a nice place to live for people of varying means.

This is an appeal from the proceedings that fixed just compensation for that earlier taking. The Mosque and Ms. McGee maintain that the compensation was anything but just. They point out that the trial judge directed a verdict that fixed compensation at approximately 11 cents per square foot for the properties. They note that a square foot of "linoleum has more value than defendants' land was determined to have."

The Mosque and Ms. McGee are correct in their assessment that the valuations employed by SWIDA valued the land as practically worthless. The land may well have been worth something more than SWIDA's appraiser claimed, but the only evidence of the land's value was presented by SWIDA. The Mosque's appraisal was stricken, and according to Ms. McGee, the appraiser that she hired failed to send an appraisal to her in time for the trial.

The Mosque and Ms. McGee set forth five arguments in their briefs. However, counsel for the defendants conceded at oral argument that this case turns upon two things that happened along the path to fixing compensation for the properties. The result of the proceedings is perfectly understandable given what evidence was presented at the trial to determine compensation. Once the trial judge struck the Mosque's appraisal and barred the testimony of its hired appraiser and thereafter denied the requests for a continuance urged by counsel for the Mosque and by an unrepresented Ms. McGee, the outcome was a foregone conclusion. The Mosque and Ms. McGee were going to receive the amount of money that SWIDA's appraiser thought they should receive as compensation for SWIDA's condemnation of their property. That is exactly what happened.

We must decide whether the trial judge abused his discretion when, by virtue of his rulings, he deprived Ms. McGee and the Mosque of expert opinion on the value of their land. This question has two parts. First, we must determine whether it was an abuse of discretion to strike the Mosque's appraisal and bar the appraiser's opinion regarding the taken land's fair market value. If we decide that it was not an

abuse of the trial judge's discretion to bar the landowner's evidence of valuation, we must further determine whether it was a discretionary abuse to deny the Mosque a continuance in order to secure another appraisal. We also must decide whether it was an abuse of discretion to deny Ms. McGee's request for a continuance in order to procure legal representation and an appraisal.

SWIDA's appraiser fixed the fair market value of nine parcels of land taken from the Mosque at $5,330. The trial judge directed a verdict for that amount of money. The Mosque's appraiser appraised the same nine parcels as having a value of approximately $1.4 million.

■ The Illinois Supreme Court has found that Rules 703 and 705 of the Federal Rules of Evidence (Fed. Rs. Evid. 703, 705) apply to condemnation cases. *City of Chicago v. Anthony,* 136 Ill. 2d 169, 184-86, 554 N.E.2d 1381, 1388-89 (1990). Whether the facts and data relied upon by a given appraiser are of a type reasonably relied upon by experts in the field of real estate appraisals is a determination left to the sound discretion of the trial court. *Anthony,* 136 Ill. 2d at 186, 554 N.E.2d at 1389. When appraisals are submitted, the trial court must not " 'abdicate its independent responsibilities to decide if the bases meet minimum standards of reliability as a condition of admissibility.' " *Anthony,* 136 Ill. 2d at 186, 554 N.E.2d at 1389, quoting *In re "Agent Orange" Product Liability Litigation,* 611 F. Supp. 1223, 1245 (E.D.N.Y. 1985), *aff'd,* 818 F.2d 187 (2d Cir. 1987).

■ A trial judge's determination on the admissibility of expert testimony is a decision left to that judge's sound discretion, and we will not disturb it unless the circumstances reveal that the trial judge manifestly abused his discretion. *Snelson v. Kamm,* 204 Ill. 2d 1, 24, 787 N.E.2d 796, 809 (2003).

■ When we look to the appraisal in question, we clearly understand why the trial judge, as a gatekeeper of expert opinion, had to strike the appraisal and bar the opinions of the Mosque's appraiser. His appraisal of the property's worth was based upon the value of the various improvements to the land that the Mosque planned to make at some undetermined time in the future. He was prepared to tell the jury that the property was worth $1.4 million because of various buildings and structures that the Mosque hoped to build but as yet had not broken ground to achieve. Apparently, the Mosque's expert felt that SWIDA should capitalize the Mosque's dreams for the land by compensating the landowner for what the land could become, rather than what the land actually was. Such a methodology would allow for any value a landowner would want to assign merely by conjuring big dreams and wishes for his or her land use. Here, for example, SWIDA would have to consider itself lucky that the Mosque only planned what it did, rather than hoping to build an edifice akin to the Sears Tower.

The trial judge did not abuse his discretion in striking the appraisal and barring expert opinions that it contained.

The next question that we must decide is not quite as clear. The trial judge denied both landowners' requests for a continuance, a ruling made with knowledge that the landowners were not armed with their own evidence about their property's worth. Refusing the landowners' requests to have a jury determine just compensation on another day, when those landowners might have had evidence of their own, ensured the outcome of this case, a directed verdict based upon the only expert opinion offered about the land's fair market value.

■ The trial judge's denial of both landowners' requests for a continuance is again the kind of ruling that we review for discretionary abuse. Continuances are judicial determinations committed to the sound discretion of trial judges, and we will not disturb decisions about requests for delay, absent a manifest abuse of that discretion. *Taxman v. First Illinois Bank of Evanston*, 336 Ill. App. 3d 92, 96, 782 N.E.2d 803, 806-07 (2002).

As appellate counsel for the Mosque and Ms. McGee observes, at the point that the Mosque was stripped of its anticipated evidence and the continuance requests of both landowners were denied, "the defendants' right to a trial by jury was a formality only, as a directed verdict was all but guaranteed." At first blush, the trial judge's insistence that the landowners proceed in the face of their circumstance seems unduly harsh. However, the denial of a postponement needs to be considered in the context of how all the parties arrived at the trial date in question.

These landowners appealed the original quick-take decision. We decided that appeal on January 30, 2001 (*Southwestern Illinois Development Authority v. Masjid Al-Muhajirum*, 318 Ill. App. 3d 1005, 744 N.E.2d 308 (2001)), clearing the way for a jury determination of just compensation for the taking. The trial judge entered an order on April 10, 2001, which set the jury trial for September 24, 2001. The landowners had eight months from our decision, and five months from the order setting a trial date, to ready their challenge to SWIDA's evidence of their property's worth.

The trial was not to transpire as scheduled. On September 5, 2001, the attorney for both landowners filed two motions asserting that he had lost lines of communication with his clients and asking for an order permitting him to withdraw as counsel. On September 19, 2001, counsel was allowed to withdraw, and the Mosque and Ms. McGee asked to postpone the trial. The jury trial was postponed from September 24, 2001, until December 17, 2001. On October 16, 2001, another attorney entered his appearance for the two landowners.

Given the December 2001 trial setting, the landowners had 11 months from our decision, and 2 months from the appearance of new counsel, to ready themselves for trial.

The December trial did not materialize as planned. The landowners asked their new attorney to withdraw from representation on the eve of the scheduled trial. The trial judge, over SWIDA's objection, allowed another attorney to withdraw from the case. The trial was scheduled for March 18, 2002. By virtue of this delay, the landowners were afforded one year and three months from the decision that cleared the way for the trial, in order to prepare for that trial.

The case was continued again on March 12, 2002. The delay was again at the landowners' request and was again over SWIDA's objection. The case was set for a trial on May 6, 2002. The landowners had another two months to prepare for the trial. In all, the trial to determine just compensation in this case was a proceeding that was postponed four times at the request of the landowners, allowing almost a year and a half to mount a proper challenge to SWIDA's position on valuation.

Appellate counsel points out that the land was already taken and developed into a housing complex and that allowing a fifth last-minute continuance request would have caused no harm. He maintains that the sound exercise of judicial discretion called for further delay, particularly in light of the last-minute ruling that struck the Mosque's valuation expert and Ms. McGee's stated difficulties in hiring a lawyer and retrieving a paid-for appraisal. Finally, he argues the harshness of the ruling, which, in effect, was tantamount to a directed verdict fixing compensation based upon the sole appraisal submitted—the miserly judgment of SWIDA's hired expert.

We might have preferred that the trial judge allow the landowners more time to seek out and procure an expert who could provide a valid valuation as a counter to SWIDA's expert opinion on fair market value. Notwithstanding, given the pattern of last-minute continuance requests, we cannot say that the denial of a fifth request constituted a manifest abuse of discretion. We sympathize with appellate counsel and his clients, when we examine the nature of the jury proceeding. The trial to determine just compensation was not much of a trial and was a totally one-sided event. SWIDA's expert controlled the outcome, and consequently, the compensation awarded was lower than it might otherwise have been, had the landowners presented opinions from their own experts.

Trial judges possess inherent powers to administer their dockets in a manner designed to ensure the efficient and economic disposition of cases. The trial judge in this matter granted four last-minute

requests for delay and, on each occasion, allowed generous time spans within which the landowners could have done what was necessary to ready themselves for the protection of their interests. Moreover, we must disagree with the position that another continuance would have visited no harm upon anyone. With each last-minute delay, SWIDA was incurring pointless attorney fees for preparation and appearances. There comes a point in an aging case where trial judges are entitled to lose patience with lackadaisical parties who simply refuse to treat trial settings as the deadline for doing the things that need to be done in order to be ready for a trial.

■ Given the historical pattern of delays, the trial judge might have fairly concluded that the Mosque and Ms. McGee were the kind of litigants that would never be fully prepared and ready for trial. The trial judge did not abuse his discretion when he decided that it was time to conclude this matter and insisted upon proceeding on the fourth date that he had set for compensation's resolution.

■ The Mosque contends that the trial judge erred in refusing to allow the appraiser to testify on damages to the remainder and that the judge erred in denying a motion *in limine* that requested that the remainder property be declared a special use. The contentions depend upon the viability of the Mosque's appraisal and the opinions of its appraiser. Since the trial judge acted within his sound discretion in striking the appraisal and its author's opinions, the Mosque lacked the means to establish damages to the remainder or to establish that it should be declared a special use.

■ Finally, the landowners argue that the total compensation ordered to be paid for the taking of their land violates the constitutional mandate that private property cannot be taken without the payment of just compensation. The argument necessarily requires us to examine the appraisals of SWIDA's expert and, without any evidence to suggest that those appraisals are wrong, find that they are so wrong that the constitution has been offended. We decline to constitutionally question whether the compensation in this case was enough compensation to be just. While it was not very much compensation, the compensation was in return for the taking of slum properties. Most of the parcels of land in the area had been abandoned by taxpayers who allowed them to be taken for delinquent taxes. As noted during oral argument, a reasonable position could be taken that these properties had no value at all and that, in reality, they constituted a financial liability that no one would want to purchase.

For the reasons stated, we affirm.

Affirmed.

CHAPMAN, P.J., and HOPKINS, J., concur.